# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CASE NO. 4:24-cv-161

---

**IOWA MIGRANT MOVEMENT FOR JUSTICE, JANE DOE, ELIZABETH ROE,**
*Plaintiffs,*

**v.**

**ATTORNEY GENERAL OF IOWA BRENNA BIRD, IN HER OFFICIAL CAPACITY, POLK COUNTY ATTORNEY KIMBERLY GRAHAM, IN HER OFFICIAL CAPACITY, CLAYTON COUNTY ATTORNEY ZACH HERRMANN, IN HIS OFFICIAL CAPACITY,**
*Defendants.*

---

## *AMICUS CURIAE* BRIEF
## OF THE AMERICAN IMMIGRATION LAWYERS ASSOCIATION

---

Alexander Smith, *Local Counsel*
Benjamin D. Bergmann
Parrish Kruidenier, L.L.P.
2910 Grand Avenue
Des Moines, Iowa 50312
(515) 284-5737
asmith@parrishlaw.com
bbergmann@parrishlaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTEREST OF AMICUS CURIAE ........................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

   I.   Iowa's law covers many individuals with lawful status in the United States .................... 2

      A.   Iowa's law criminalizes people who have legally entered the U.S. on valid visas ......... 2

      B.   Iowa's law criminalizes asylees ..................................................................................... 5

      C.   Iowa's law criminalizes those who may be lawfully present after their removal orders
      are reversed ......................................................................................................................... 7

      D.   Iowa's law criminalizes individuals in a variety of other lawful immigration statuses 10

   II.   Iowa's law criminalizes people whom the federal government has protected from
   deportation ........................................................................................................................ 13

      A.   Iowa's law criminalizes those who have been granted withholding of removal under 8
      U.S.C. § 1231(a)(3) or protection under the Convention Against Torture .......................... 14

      B.   Iowa's law criminalizes children in need of protection ............................................... 16

      C.   Iowa's law criminalizes those with deferred action or parole ..................................... 17

   III.   Iowa's law criminalizes people whom the federal government allows to remain in the
   United States while their applications for lawful status are pending ...................................... 19

CONCLUSION ....................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**

*Dada v. Mukasey*, 554 U.S. 1 (2008) ......................................................................... 12

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006) ................................................... 9

*In re Mogharrabi*, 19 I&N Dec. 439 (BIA 1987) ..................................................... 18

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) ........................................................ 18

*Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) ............................................... 17, 18

*Matter of Bulnes-Nolasco*, 25 I&N Dec. 57 (BIA 2009) ........................................... 12

*Matter of X-G-W-*, 22 I&N Dec. 71 (BIA 1998) ....................................................... 13

*Nken v. Holder*, 556 U.S. 418 (2009) ....................................................................... 11

*Patel v. Ashcroft*, 378 F.3d 610 (7th Cir. 2004) ...................................................... 13

*Perez-Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013) ............................................ 13

*Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471 (1999) ................................ 21

*United States v. Gracidas-Ulibarry*, 231 F.3d 1188 (9th Cir. 2000) ........................ 8

*Velasquez-Castillo v. Garland*, 91 F.4th 358 (5th Cir. 2024) ................................... 9

*William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007) ................................................. 13

**Statutes**

8 U.S.C. § 1101 ................................................................................ 6, 9, 14, 19

8 U.S.C. § 1151 ........................................................................................... 6

8 U.S.C. § 1153 ...................................................................................... 6, 19

8 U.S.C. § 1158 ......................................................................................... 17

8 U.S.C. § 1159 ........................................................................................... 9

8 U.S.C. § 1182 ................................................................................... *passim*

8 U.S.C. § 1229a ............................................................................. 11, 12, 16

8 U.S.C. § 1229b ....................................................................................... 16

8 U.S.C. § 1229c ....................................................................................... 11

8 U.S.C. § 1231 .................................................................................... 17, 18

8 U.S.C. § 1241 ......................................................................................... 17

8 U.S.C. § 1252 .................................................................................... 11, 12

8 U.S.C. § 1254a ....................................................................................... 16

8 U.S.C. § 1255 ..................................................................................... 6, 20

8 U.S.C. § 1326 ........................................................................................... 8

Iowa Code § 902.9 ....................................................................................... 5

**Regulations**

8 C.F.R. § 1003.2 ...................................................................................... 12

8 C.F.R. § 1003.23 .................................................................................... 12

8 C.F.R. § 1208.16 .................................................................................... 18

8 C.F.R. § 1209.17 .................................................................................... 18

8 C.F.R. § 1241.1 ...................................................................................... 10

8 C.F.R. § 1241.8 ....................................................................................... 9

8 C.F.R. § 204.11 ...................................................................................... 19

8 C.F.R. § 208.16 ...................................................................................... 18

8 C.F.R. § 208.18 .................................................................................. 17, 18

8 C.F.R. § 208.30 ...................................................................................... 23

8 C.F.R. § 212.16 ...................................................................................... 15

8 C.F.R. § 212.17 ...................................................................................... 14

8 C.F.R. § 212.18 ........................................................................................................ 15
8 C.F.R. § 214.11 ........................................................................................................ 15
8 C.F.R. § 214.14 ........................................................................................................ 14
8 C.F.R. § 245.24 ........................................................................................................ 14
8 C.F.R. § 274a ........................................................................................................... 19

**Other Authorities**

1 Ira J. Kurzban, *Immigration Law Sourcebook* 415 (18th ed. 2022) ............................ 8

David Bier, 126 Parole Orders over 7 Decades: A Historical Review of Immigration Parole
    Orders (July 17, 2023) ............................................................................................ 22

DHS Policy Statement 065-06, "Worksite Enforcement: The Strategy to Protect the American
    Labor Market, the Conditions of the American Worksite, and the Dignity of the Individual"
    (Oct. 12, 2021) ....................................................................................................... 22

ICE Enforcement & Removal Operation Statistics ...................................................... 11

Immigrant Legal Resource Center, A STEP-BY-STEP GUIDE TO COMPLETING FOIA
    REQUESTS WITH DHS ........................................................................................... 10

Migration Policy Institute, *Frequently Requested Statistics on Immigrants and Immigration in
    the United States* (Mar. 13, 2024), https://www.migrationpolicy.org/article/frequently-
    requested-statistics-immigrants-and-immigration-united-states-2024 ...................... 9

U.S. Immigration and Customs Enforcement, *FAQs: Facilitating Return for Lawfully Removed
    Aliens* ................................................................................................................... 11

USCIS Policy Manual ........................................................................................... *passim*

USCIS, *Check Case Processing Times* .......................................................................... 7

USCIS, *Forms, I-601 Waiver of Inadmissibility, Instructions* (2024) .......................... 16

USCIS, *Green Card Based on Special Immigrant Juvenile Classification* ................... 20

USCIS, *Number of Service-Wide Forms Fiscal Year to Date* ........................................ 7

USCIS, *Policy Alert: Special Immigrant Juvenile Classification and Deferred Action*, March 7,
    2022 ....................................................................................................................... 20

USCIS, *Regulatory Impact Analysis, Fee Schedule and Changes to Certain Other Immigration
    Benefit Request Requirements* (Jan. 2024) ............................................................... 7

**Legislative Acts**

2024 Iowa Acts Senate File 2340 ................................................................................. 4

Article 3 of the U.N. Convention Against Torture and Other Forms of Cruel, Inhuman or
    Degrading Treatment or Punishment, opened for signature Dec. 10, 1984, S. Treaty Doc. No.
    100–20 (1988), 1465 U.N.T.S. 85 ........................................................................... 17

iii

**INTEREST OF AMICUS CURIAE**

The American Immigration Lawyers Association (AILA), founded in 1946, is a national, non-partisan, non-profit association with more than 16,000 members throughout the United States and abroad, including lawyers and law school professors who practice and teach in the field of immigration and nationality law. AILA seeks to promote justice, advocate for fair and reasonable immigration law and policy, and advance the quality of immigration and nationality law and practice. AILA's members practice regularly before the Department of Homeland Security, immigration courts and the Board of Immigration Appeals, as well as before the U.S. Courts of Appeals and the U.S. Supreme Court.[1]

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Iowa's law makes it a criminal offense for a noncitizen to enter the state of Iowa, or to be found there, if that person has *ever* been removed from the United States. 2024 Iowa Acts Senate File 2340 (to be codified as new Iowa Code ch. 718C (2024)) (hereinafter "S.F. 2340"), § 2. The same criminal liability is triggered if the noncitizen has ever been denied admission to, excluded from, or deported from the United States. *Id.*

If a person is convicted of this offense, the trial judge must issue an order requiring the person, after any term of imprisonment, to leave this country. The person must "return to the foreign nation from which [he] entered or attempted to enter." *Id.* 4.4. Alternatively, the statute provides a plea-bargain mechanism under which the judge, after finding probable cause for arrest, may decline further prosecution and move directly to issuing the order requiring the person to leave the United States. *Id*. § 4.3. Either way, once the order has issued, the statute specifies that

---

[1] No party's counsel authored this brief in whole or in part, nor contributed money intended to fund preparing or submitting this brief. No person other than amici or their counsel contributed money intended to fund preparing or submitting this brief.

failure to leave the United States is a Class C felony, punishable by up to ten years in prison. *Id.* § 5; Iowa Code § 902.9.

Iowa's law covers an exceedingly broad class of people. Its most striking feature is that while it requires that at some point in the past the government have issued an order refusing a person admission into the United States or directing that they be removed from, it does *not* include any provision relating to the person's current immigration status. Nothing in Iowa's law precludes its application to lawful permanent residents ("green card" holders), or other people with a right to remain in the United States under federal immigration law.

Nor is this just an academic debating point. As discussed below, the class of people subject to the law's prohibition, who can be prosecuted, imprisoned, and subjected to a state judge's order requiring them to leave the United States, includes many lawful permanent residents. It also includes people who are present in the United States pursuant to validly issued visas, people who have a right to be here under federal immigration law. It even includes people with federally granted protection from removal, who would be persecuted or tortured in their home countries such that their removal to those countries would violate this Nation's international-law obligations. It includes still more people whose status the federal government is in the process of determining, whom the federal government has permitted to stay in the United States while that decision is being made. The state of Iowa has enacted a law under which it can criminally prosecute and incarcerate all of these people and order them to leave the country.

## I.   Iowa's law covers many individuals with lawful status in the United States

### A.   Iowa's law criminalizes people who have legally entered the U.S. on valid visas

There are a variety of routes through which a noncitizen can legally enter and be present in the United States. The one most commonly taken is entry on a valid visa – either an "immigrant"

visa, leading to permanent residence and a green card, or a temporary "nonimmigrant" visa, such as the 8 U.S.C. § 1101(a)(15)(F) student visa or the 8 U.S.C. § 1101(a)(15)(L) visa for executives of multinational corporations. Alternatively, a person who has entered the U.S. with immigration parole under 8 U.S.C. § 1182(d)(5) (authorizing DHS to "parole [a person] into the United States . . . for urgent humanitarian reasons"), may become entitled to a valid immigrant visa and become a lawful permanent resident that way. *See* 8 U.S.C. § 1255(a).

For a person to obtain a visa, two things must be true. First, the person must be eligible for one. It may be that the person is eligible for a visa because he is married to, or a close family member of, a U.S. citizen or lawful permanent resident. See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a). It may be that he has a job offer from a U.S. employer satisfying § 1182(a)(5)'s "labor certification" requirements. *See id.* 1153(b). It may be that he has secured a visa by means of the lottery administered under 8 U.S.C. § 1153(c). It may be that he falls within one of a wide range of classifications described in 8 U.S.C. § 1101(a)(27), including that of religious minister. *See id.* § 1153(b)(4). It may be that he falls within any of the twenty-two separate categories of temporary nonimmigrant visas described in 8 U.S.C. § 1101(a)(15).

Second, the person must not be "inadmissible," as that term is defined in 8 U.S.C. § 1182. A variety of things, including conviction for certain crimes, can make a person inadmissible. Most saliently for purposes of this case, if a person is removed from the United States, that will render him temporarily inadmissible.  A person who is removed upon seeking entry at the border is inadmissible for a five-year period. Id. § 1182(a)(9)(A)(i). A person who is ordered removed from the interior of the country is inadmissible for a ten-year period. *Id.* § 1182(a)(9)(A)(ii).[2] That

---

[2] A person who has been removed multiple times is inadmissible for twenty years, while a person who has been removed after conviction for an aggravated felony is inadmissible indefinitely. 8 U.S.C. § 1182(a)(9)(A)(i).

inadmissibility, though, is only temporary. It expires after a period of years. In addition, DHS may waive even that temporary inadmissibility at any time. *Id.* § 1182(a)(9)(A)(iii).

Applicants seeking to return to the United States whose § 1182(a)(9)(A) inadmissibility has not yet expired, can file a Form I-212 to seek permission to reapply for admission. The form is expensive to file – the associated fee is more than $1000 – so noncitizens generally do not file it unless they have an immigrant visa available to them. Nonetheless, about 8,200 fee-paid I-212 applications are filed every year.[3] The best available evidence suggests that somewhere in the neighborhood of 70% of those applications are granted.[4]

In other words: Every year, the U.S. government tells thousands of people that they may legally return to the United States, despite being removed from the U.S. and not having waited out the period of inadmissibility specified in § 1182(a)(9). The vast majority of those people use their approved I-212 waivers to gain legal immigration status in the U.S. pursuant to a valid visa.

Add to that sum the number of people who, having once been removed from the United States, become newly eligible to return simply because their five- or ten-year periods of ineligibility have expired. That number too is large. Some of those people are eligible to return to

---

[3]  *See* USCIS, Regulatory Impact Analysis, Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements (Jan. 2024), https://downloads.regulations.gov/ USCIS-2021-0010-8179/content.pdf, at 120. This underestimates the total number of I-212s filed, since during the relevant time period some I-212 applications – those filed by VAWA self-petitioners or certain battered spouses – could be filed without paying a fee.

[4]  USCIS does not release statistics on its approval rate for I-212s. It does, however, release statistics for a larger category of waivers that includes the I-212. Within that category, in FY2023, it granted 72% of the applications for which it reached a decision, although many of the applications were still pending at the close of the fiscal year. The still-pending applications will not be pending forever, though. Currently, 80% of I-212s are processed within 25 months. See USCIS, Number of Service-Wide Forms Fiscal Year to Date, https://www.uscis.gov/sites/default/files/document/forms/quarterly_all_forms_fy2023_q4.pdf; USCIS, Check Case Processing Times, https://egov.uscis.gov/processing-times/ (last visited Apr. 30, 2024).

the U.S. on a valid visa as well.

The bottom line is that – every year – multiple thousands of people who were once ineligible to return to the United States by virtue of their removal, become eligible legally to return, and do in fact return. They have valid visa status; they are not inadmissible; and they are legally in the U.S. Many will be lawful permanent residents.

All of those people, however, are subject to arrest by state police if they enter the state of Iowa. The state of Iowa can order them to leave the United States, and move to the foreign country from which they last traveled here. It is irrelevant whether they have any connection to that foreign country, or whether they have its permission to enter. Iowa's law defies the U.S. government's decision that its having once removed a person does not mean that he is barred forever. Rather, the law gives Iowa prosecutors and judges the power to criminalize and expel from this country a person whom the U.S. government has given permission to come here and become part of our community.[5]

## B. Iowa's law criminalizes asylees

Entry on a valid visa is not the only route to legal residence in the United States. Of the other routes, one of the most important is asylum. U.S. law provides that a person seeking entry into the United States who is "unable or unwilling to return to [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," may apply for and be granted asylum

---

[5] 8 U.S.C. § 1326(a) makes it a federal offense for a noncitizen who has been removed from the U.S. to return here, *unless* the U.S. government has consented to their return. *See, e.g., United States v. Gracidas-Ulibarry*, 231 F.3d 1188 (9th Cir. 2000) (§ 1326 is a crime of "illegal reentry"); 1 Ira J. Kurzban, *Immigration Law Sourcebook* 415 (18th ed. 2022) (elements of a § 1326 conviction include reentry "without requisite authority"). The Iowa statute contains no such limitation.

in the United States. 8 U.S.C. §§ 1101(a)(42), 1158. An individual who is granted asylum is afforded the legal status of an asylee.

The fact that an asylum applicant was once removed from, or denied admission to, the United States is not relevant to, and plays no role in, the asylum process. See 7 USCIS Policy Manual part M, chap. 3, https://www.uscis.gov/policy-manual/volume-7-part-m-chapter-3 ("an asylee is not subject to admissibility grounds at the time of the asylum grant"). So if a noncitizen arrives at a U.S. port of entry and applies for asylum, the fact that he may have previously been removed from the United States is immaterial.[6] In FY 2022, this country granted asylum to more than 35,000 people.[7] Some number of those 35,000 people were previously removed from the United States. If they entered Iowa today, they would be subject to arrest.

One year after a grant of asylum, an asylee can apply to have his status adjusted to that of lawful permanent resident. 8 U.S.C. § 1159. At that point, the Department of Homeland Security will consider inadmissibility grounds. If an asylee was removed from the United States sufficiently recently for the 8 U.S.C. § 1182(a)(9)(A) bar to apply, he will need to seek a waiver on Form I-602. But that waiver is routinely granted, because the fact that "the applicant has already

---

[6] If a person reenters the United States illegally after having been removed, DHS may choose to reinstate the prior removal order, in which case the person is only eligible for withholding of removal and protection under the Convention Against Torture, but not asylum. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006). But reinstatement is not appropriate when a person, once removed, simply approaches a port of entry seeking asylum. Indeed, even some people who are arrested in the interior of the U.S. after having been removed and having made a subsequent illegal reentry may be exempt from reinstatement, allowing them to apply for asylum. See *Velasquez-Castillo v. Garland*, 91 F.4th 358 (5th Cir. 2024) (unaccompanied minors); 8 C.F.R. § 1241.8(d) (applicants for benefits under the Haitian Refugee Fairness Act or the Nicaraguan Adjustment and Central American Relief Act).

[7] This figure includes both principal applicants and their family members. *See* Migration Policy Institute, *Frequently Requested Statistics on Immigrants and Immigration in the United States* (Mar. 13, 2024), https://www.migrationpolicy.org/article/frequently-requested-statistics-immigrants-and-immigration-united-states-2024.

established past or a well-founded fear of future persecution . . . is an extremely strong positive discretionary factor." 7 USCIS Policy Manual, *supra*. With a waiver, and absent any unrelated bar to adjustment, the once-removed asylee will become a lawful permanent resident.

Once again, though, nothing in the Iowa statute pretermits its application to persons who have been granted asylum, or even those who have obtained lawful permanent residence status after a grant of asylum. Nothing in the Iowa statute, in other words, suggests that it could not be applied to countermand the federal government's decision – in accordance with this Nation's obligations under the 1951 Refugee Convention and the Convention Against Torture – to protect a person against return to a country where he faces persecution or torture.

**C. Iowa's law criminalizes those who may be lawfully present after their removal orders are reversed**

Another category of individuals that may be present in Iowa with lawful status, despite a prior removal, include those whose removal orders have been overturned.[8] Under federal law there

---

[8] As a practical matter, it can often be difficult to determine whether or not someone has been previously removed pursuant to a final removal order, as well as the current status of a removal order – particularly for a lay person or a state official not familiar with the complexities of immigration law. Such an assessment often requires obtaining a complete immigration file, sometimes from multiple immigration agencies, which can take significant time. *See, e.g.*, Immigrant Legal Resource Center, A STEP-BY-STEP GUIDE TO COMPLETING FOIA REQUESTS WITH DHS, *available at* https://www.ilrc.org/sites/default/files/resources/a_step_by_step_guide_to_completing_foia_requests_with_dhs.pdf (explaining that immigration files can be located across several agencies–USCIS, CBP, ICE, and OBIM, as well as the Department of State (for passport records) and the Department of Justice (for immigration court records)).

One must then have the capacity to recognize the legally relevant documents that constitute a final removal order and any documents indicating whether the removal order has been effectuated. For example, even if an immigration court issues a removal order, the order may not be final given pending appeals to the Board of Immigration Appeals or certification to the Attorney General for further review. *See* 8 C.F.R. § 1241.1. An individual may also have departed the United States pursuant to processes that to a lay person appear to be a removal, but are not, such as "voluntary departure," 8 U.S.C. § 1229c, or "voluntary return." *See* ICE Enforcement & Removal Operation Statistics, *available at* https://www.ice.gov/spotlight/statistics (defining voluntary

are a variety of ways in which a prior removal order could be rescinded, thereby restoring someone to their prior lawful status or opening up their ability to secure lawful status.

For example, individuals can seek federal court review of their final order of removal by filing a petition for review with the appropriate federal circuit court. 8 U.S.C. § 1252. Removal during this process is not automatically stayed. Instead, one must seek and be granted a stay of removal, or an individual can continue to litigate their petition after departure from the United States. As the Supreme Court has explained, "[a]liens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken v. Holder*, 556 U.S. 418, 435 (2009). If a circuit court grants an individual's petition for review, that could enable them to lawfully return to the United States either because it restores them to a prior lawful permanent resident status, or because the federal government agrees to facilitate their return to the United States for further immigration proceedings. *See generally* U.S. Immigration and Customs Enforcement, *FAQs: Facilitating Return for Lawfully Removed Aliens*, https://www.ice.gov/remove/facilitating-return (last visited May 1, 2024). Iowa's law criminalizes even these individuals, solely because of the prior removal, while ignoring the judgment of the U.S. Court of Appeals that lawfully permitted the individual's return.

A removal order could also be overturned through filing a motion to reopen or reconsider with the immigration courts or the Board of Immigration Appeals. *See* 8 U.S.C. § 1229a(c)(6)-(7) (providing the statutory authority for a motion to reconsider or reopen); 8 C.F.R. § 1003.2 (*sua sponte* authority to reconsider or reopen). A denial of a motion to reopen or reconsider can also be

---

returns" as "[d]iscretionary relief granted by an ICE officer at the border by permitting a noncitizen to depart the United States without a removal order and related immigration consequences).

reviewed by a circuit court through a petition for review. 8 U.S.C. § 1252(a)(1). The Supreme Court has explained that a motion to reopen a removal order is an "important safeguard" intended "to ensure a proper and lawful disposition" of immigration proceedings. *Dada v. Mukasey*, 554 U.S. 1, 18 (2008). Iowa's law seriously undermines this "important safeguard," however, by criminalizing Iowans with lawful immigration status simply because they were previously denied admission or removed, without consideration of the fact those orders might have been lawfully overturned following the procedures set forth by federal law and regulations.

For example, if an individual fails to attend an immigration court hearing, they may be ordered removed in absentia. 8 U.S.C. § 1229a(b)(5)(A). If the failure to appear was due to the individual not receiving proper notice of the hearing, or because they were in state or federal custody and unable to appear, they may file a motion to reopen and rescind the removal order at any time, even if they have already departed the United States. *See generally* 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii); *Matter of Bulnes-Nolasco*, 25 I&N Dec. 57 (BIA 2009) (finding that departure from United States does not bar motions to reopen and rescind in absentia orders of removal). Once the underlying removal order has been reopened, an individual would then be eligible to seek lawful status. Such individuals could be eligible to become lawful permanent residents, for example as the spouse of a U.S. citizen or by receiving a grant of asylum, and as such be on a lawful path to U.S. citizenship themselves. Yet Iowa's law would criminalize these individuals due to a long-ago removal, irrespective of its later recission.

In some circumstances, a prior removal order can also be rescinded due to a change in fact or law. For example, where a lawful permanent resident may have been ordered removed on the basis of a criminal conviction, but the underlying conviction or guilty plea is overturned, a motion to reopen the removal proceedings can restore the person to lawful permanent resident status. *See,*

*e.g., Perez-Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013) (noncitizen may file such a motion even after leaving the United States); *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007) (same). In other circumstances, immigration law may change, such that an individual would no longer be removable. In those cases, individuals can similarly seek to reopen the prior proceedings and restore their prior lawful status. *See, e.g.*, *Matter of X-G-W-*, 22 I&N Dec. 71 (BIA 1998). For an individual who had sought asylum or other fear-based relief, but whose claim was denied, they can seek reopening of the order if they show worsened conditions in their home countries; if successful, they would be granted lawful status. *See, e.g.*, *Patel v. Ashcroft*, 378 F.3d 610, 612 (7th Cir. 2004) (per curiam). In all of these circumstances, an individual could be in lawful status in Iowa today, despite having previously been denied admission or removed from the United States, but now face criminal prosecution and an order from Iowa to return to another country, possibly the very one in which they faced persecution.

**D. Iowa's law criminalizes individuals in a variety of other lawful immigration statuses**

Congress has provided for an array of other types of legal immigration status that are not barred by a prior removal or denial of admission. Iowa's law still applies, however, regardless of whether an individual has obtained one of these forms of lawful status.

Individuals who have been the victims of qualifying criminal activity in the United States, and who have been helpful to law enforcement, may apply for U nonimmigrant status. Related statuses are also available to their family members. Congress created the U nonimmigrant status to strengthen law enforcement's ability to investigate and prosecute serious crimes, by encouraging victims of criminal activity to cooperate with law enforcement without fear due to their own lack of immigration status. *See* USCIS Policy Manual, Volume 3, Part C- Victims of Crimes, *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-1. After four years, a person

who receives U nonimmigrant status may apply for lawful permanent residence *Id.*

USCIS has broad discretion to waive nearly all grounds of inadmissibility for U applicants, including those that apply to individuals who are unlawfully present in the United States or who reentered after immigration violations. *See* 8 U.S.C. § 1182(d)(14); 8 C.F.R. § 212.17(b)(1) (discretion to waive inadmissibility grounds if "it is in the public or national interest").[9] Under the regulations, a prior removal order issued by DHS is automatically cancelled upon approval of the U nonimmigrant petition. See 8 C.F.R. § 214.14(c)(5)(i). Thus, individuals who have previously been denied admission to the United States, or removed, can still be eligible for and receive U nonimmigrant status, and may later become lawful permanent residents.[10] Yet Iowa's law subjects them to criminalization, thwarting Congress's intention to protect victims of crime and strengthen law enforcement's ability to combat crime.

Similarly, Congress created the T nonimmigrant status to protect victims of severe human trafficking. *See* USCIS Policy Manual, Volume 3, Part B - Victims of Trafficking, *available at* https://www.uscis.gov/policy-manual/volume-3-part-b-chapter-1; 8 U.S.C. § 1101(a)(15)(T) (defining T nonimmigrant status requirements). A person with T nonimmigrant status may also later apply for lawful permanent residence. USCIS Policy Manual, *supra*. The inadmissibility ground of unlawful presence can be waived where trafficking was at least one central reason for the unlawful presence, and inadmissibility grounds related to unlawful presence after a prior removal or immigration violations can also be waived if they were caused by or incident do the

---

[9] The only inadmissibility ground that cannot be waived for U nonimmigrant status or adjustment of status to lawful permanent residence is 8 U.S.C. § 1182(a)(3)(E), applicable to participants in "Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing." 8 C.F.R. § 245.24(b)(11).

[10] A prior removal order issued by an immigration judge would need to be reopened to allow for adjustment of status to lawful permanent residence.

11

trafficking victimization, and if it is in the national interest to grant the waiver. *Id.*; *see also* 8 U.S.C. § 1182(d)(3)(A)(ii) & (d)(13); 8 C.F.R. § 212.16; 8 C.F.R. § 212.18. As with U nonimmigrant status, approval of a T nonimmigrant petition automatically cancels a prior removal order. *See* 8 C.F.R. § 214.11(d)(9)(i). Yet as with those in U nonimmigrant status, victims of trafficking who were once removed but who are eligible for T nonimmigrant status, and later lawful permanent residence, may face criminal penalties under Iowa's law.

Congress also created special immigration categories in the Violence Against Women Act (1994), designed to protect victims of domestic violence. *See* USCIS Policy Manual, Volume 3, Part D – Violence Against Women Act, *available at* https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-1. Generally, when seeking a family-based visa, the U.S. citizen or lawful permanent resident family member must file the petition for the relative seeking immigration status. However, Congress was concerned that where U.S. citizens or lawful permanent residents were themselves abusers, they could use the control they had over this process as a tool to abuse and threaten the noncitizen. Thus, Congress set up a process by which victims of abuse could "self-petition" for immigration status without relying on their abusive family member. *Id.* Similar to T nonimmigrant status, a VAWA applicant can seek to waive the inadmissibility grounds that apply to unlawful presence after a removal if they can show there is a connection between the abuse and the removal or departure from the United States, or the reentry. *See* 8 U.S.C. § 1182(a)(9)(C)(iii) (specific waiver available to VAWA applicants). An immigration judge can also grant special-rule cancellation of removal under VAWA, and thus lawful permanent residence, to a victim of abuse if their removal would result in "extreme hardship" to the victim or their child or parent. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv), 1229b(b)(2). Motions to reopen removal proceedings to seek this relief are exempt from many of the ordinary

limitations on motions to reopen. *Id.*

Finally, temporary protected status ("TPS") is another form of immigration status that grants an individual the right to remain in the United States so long as the Secretary of Homeland Security has designated that it would be unsafe to return to their home country, often due to an armed conflict or natural disaster. *See* 8 U.S.C. § 1254a(b)(1). Not all possible grounds of inadmissibility apply to TPS. An individual need not even submit a waiver request for the inadmissibility grounds triggered by unlawful entry after removal or denial of admission. *See* USCIS, Forms, I-601 Waiver of Inadmissibility, Instructions, p. 13 (2024), *available at* https://www.uscis.gov/sites/default/files/document/forms/i-601instr.pdf. Thus, although an individual may have been previously removed or denied admission, they can now be present in the United States in lawful TPS status. Iowa's law would not only criminalize them, it would try to require their departure, possibly to a country that the federal government has determined is too unsafe or unstable to return to.

Iowa's law, which criminalizes individuals in all of these immigration statuses and directs their removal, directly interferes with Congress's directive that these vulnerable individuals— including survivors of domestic violence and trafficking, and individuals who cannot return to their homes due to armed conflict or natural disasters—are lawfully authorized to stay in the United States.

## II.  Iowa's law criminalizes people whom the federal government has protected from deportation

Federal immigration law recognizes multiple categories of noncitizens who do not hold legal immigration status, but whom the law nonetheless protects against deportation. They include certain people facing persecution or torture in their home countries (for whom removal would violate this country's international-law obligations); children in need of protection; and other

13

people whom the federal government has deemed in the national interest to remain in the United States. Yet any of those people might have been denied admission to, or removed from, the United States at some point in the past, and thus can be swept up by Iowa's law.

### A. Iowa's law criminalizes those who have been granted withholding of removal under 8 U.S.C. § 1231(a)(3) or protection under the Convention Against Torture

An individual who fears they would be persecuted or tortured if returned to their country of origin, but who is not eligible for asylum,[11] is still eligible to apply for other forms of relief from removal to prevent their persecution or torture.  In such circumstances, a person can still apply for withholding of removal or relief under the Convention Against Torture.[12] That is so even if the person was once removed from, or denied admission to, the United States.

Withholding of removal and protection under the Convention Against Torture are orders that prevent an individual's deportation to the country where they face a risk of persecution or torture. *See* 8 U.S.C. § 1241(b)(3); 8 C.F.R. § 208.18; *Johnson v. Guzman Chavez*, 594 U.S. 523, 535–36 (2021). Where someone has previously been removed, and illegally reenters the United States, the government has discretion to reinstate the prior removal order. In that circumstance, if the individual expresses fear of return, they are provided a "reasonable fear" interview, and if found to have a reasonable fear of return, are then placed into "withholding-only" immigration proceedings where they may apply for withholding of removal or protection under the Convention Against Torture. *Guzman Chavez*, 594 U.S. at 535–36. Thus, withholding of removal or protection

---

[11] There are a variety of reasons that an individual may not be eligible for asylum, including applying for asylum more than one year after entry to the United States, having been convicted of certain disqualifying criminal offenses, or because DHS reinstates a prior removal order. *See* 8 U.S.C. §§ 1158((a)(2)(B), 1158(b)(2), 1231(b)(5).

[12] *See* Article 3 of the U.N. Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85, ("CAT").

under CAT are not barred by a prior removal or denial of admission; to the contrary, they are explicitly available protections for those who have previously been removed and returned to the United States.

An individual who has obtained withholding of removal or CAT relief has demonstrated that it is more likely than not they would be persecuted or tortured if removed. To qualify for withholding of removal, an applicant must demonstrate that "more likely than not" their "life or freedom would be threatened" on account of their race, religion, nationality, membership in a particular social group or political opinion. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16; *In re Mogharrabi*, 19 I&N Dec. 439 (BIA 1987); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987). To qualify for protection under CAT an applicant must establish it is more likely than not she would be tortured if returned to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for…punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or . . . for any reason based on discrimination of any kind." 8 C.F.R. § 208.18(a)(1). It must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in official capacity." *Id.*  A grant of deferral of removal under CAT is mandatory for an individual who is eligible for CAT relief. 8 C.F.R. §§ 1208.16(a), 1209.17(a).

Individuals living in the United States with a grant of withholding of removal or CAT protection are not eligible to adjust status to lawful permanent residence but are eligible to obtain work authorization.[13] Federal law explicitly protects them from deportation. Yet Iowa would

---

[13] *See* 8 C.F.R. § 274a.12(a)(10), (c)(18); Form I-765, Instructions for Application for Employment Authorization, at 12, https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf.

criminalize their presence if they had ever been denied admission to, or removed from, the United States, and try to force their removal, possibly to the very countries that the immigration courts have found they risk persecution or torture, in stark violation of our obligations under international treaties.

**B.  Iowa's law criminalizes children in need of protection**

Designation as a Special Immigrant Juvenile ("SIJ") is a type of immigration classification designed to protect vulnerable juveniles present in the United States who cannot be reunited with a parent due to abuse, neglect, or abandonment, and whose best interest is not served by return to their country of nationality. *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11. In order to obtain SIJ classification, a juvenile must first seek what is known as a predicate order from a state court, which makes findings under state law regarding dependency and custody of the juvenile, as well as findings that reunification with a parent is not possible due to abuse, neglect, or abandonment, and that return to the juvenile's country of nationality or last habitual residence is not in her best interest. *See generally* USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2.

Juveniles who have obtained SIJ classification do not yet have legal status, although they can eventually apply to adjust their status to that of lawful permanent resident, after waiting for an available visa number. *See* 8 U.S.C. § 1153(b)(4). Although the SIJ petition must be submitted before the juvenile turns 21, eligibility for SIJ and later for adjustment of status will continue even after the juvenile has turned 21, which is particularly common given long visa backlogs and processing delays.[14] The inadmissibility grounds that may be triggered by unlawful reentry are

---

[14] USCIS, *Green Card Based on Special Immigrant Juvenile Classification*, *available at* https://www.uscis.gov/green-card/green-card-eligibility/green-card-based-on-special-immigrant-juvenile-classification ("There is no age limit to apply for a Green Card as an SIJ. If you were

irrelevant to initially obtaining SIJ classification,[15] and at the time of the application to adjust status, are waivable.[16] *See* 8 U.S.C. § 1255(h) (inadmissibility grounds applicable to SIJ are waivable "for humanitarian purposes, family unity, or when it is otherwise in the public interest"). SIJ grantees are also generally able (via deferred action, see Part II.C, *infra)* to receive a work permit while waiting to adjust their status to lawful permanent residence. *See* USCIS, *Policy Alert: Special Immigrant Juvenile Classification and Deferred Action*, March 7, 2022, *available at* https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf.

A juvenile who has obtained SIJ classification may well have been removed from the United States at some point in the past. Iowa's law would criminalize these vulnerable juveniles, despite the fact they have followed the lawful processes Congress established to protect them. What's more, Iowa would try to order their deportation despite an Iowa state court's having already found, in making the predicate SIJ findings, that removal is not in their best interest.

### C. Iowa's law criminalizes those with deferred action or parole

Iowa's law would criminalize the presence of other individuals whom the federal government has deemed in the national interest to remain in the United States. This class of individuals includes recipients of Deferred Action for Childhood Arrivals (DACA), people

---

under 21 on the date you properly filed your Form I-360, we will not deny your SIJ-based Form I-485 based on your current age, even if you are older than 21 when you file your Form I-485 or when we adjudicate it.").

[15] USCIS Policy Manual, Volume 6, Part J- Special Immigrant Juveniles, *available at* https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-2 ("Grounds of inadmissibility do not apply to the adjudication of the SIJ petition.").

[16] USCIS Policy Manual, Volume 7, Part F- Special Immigrant Based Adjustment, *available at* https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7 (explaining that inadmissibility under § 1182(a)(9)(A) for "Certain Aliens Previously Removed" and § 1182(a)(9)(C) for "Aliens Unlawfully Present After Previous Immigration Violations" is waivable).

cooperating in an investigation of labor abuses, and survivors of domestic violence and trafficking. Any of these individuals may have previously been deported or denied admission, yet federal law and policy authorizes them to stay.

Federal immigration law authorizes executive branch agencies to issue deferred action to individuals. *See generally Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 483–84 (1999) (describing deferred action). Deferred action is generally understood as a prosecutorial discretion tool, which protects people against removal for a period of time. *See* https://www.uscis.gov/working-in-the-united-states/information-for-employers-and-employees/dhs-support-of-the-enforcement-of-labor-and-employment-laws (last visited May 1, 2024).

In recent years, administrations have extended deferred action to individuals including those who entered the United States as a child and have remained (DACA), noncitizens significantly impacted by Hurricane Katrina, and survivors of violence and parental maltreatment who must wait several years to apply for residency due to Congressional caps. Most recently, the Department of Homeland Security provided the possibility of deferred action to workers involved in labor investigations, understanding that their protection from deportation would assist in the protection of all workers, including US citizens. *See* DHS Policy Statement 065-06, "Worksite Enforcement: The Strategy to Protect the American Labor Market, the Conditions of the American Worksite, and the Dignity of the Individual" (Oct. 12, 2021).

In all of these circumstances, the federal government will review and consider previous removals and other immigration history in deciding to grant deferred action. Where deferred action is granted, the federal government has indicated that the person's presence in the United States is in the public interest. That is so even though the person may previously have been removed from

18

the United States. Iowa's law would countermand those determinations.

Similarly, Iowa's law would criminalize broad classes of people who have legally entered the United States on immigration parole. The Immigration and Nationality Act authorizes the Department of Homeland Security, for humanitarian reasons, to allow a noncitizen to enter and remain in the United States on immigration parole. 8 U.S.C. § 1182(d)(5). Presidents have enacted categorical parole orders, for the benefit of classes of citizens, well over 100 times since 1952. *See* David Bier, 126 Parole Orders over 7 Decades: A Historical Review of Immigration Parole Orders (July 17, 2023), https://www.cato.org/blog/126-parole-orders-over-7-decades-historical-review-immigration-parole-orders. The Biden Administration has granted immigration parole, typically for two-year periods, to more than 350,000 persons facing humanitarian crises in Cuba, Nicaragua, Venezuela, Haiti, Colombia, El Salvador, Guatemala, and Honduras, as well as Ukraine and Afghanistan. *See id*. Persons with parole status have work authorization.

Persons entering the United States pursuant to federal parole authority may well have been denied admission or removed from the United States at some time in the past. Iowa's law would criminalize them, countermanding the Federal government's parole decision.

### III. Iowa's law criminalizes people whom the federal government allows to remain in the United States while their applications for lawful status are pending

Under immigration law, applicants for many types of status are permitted to remain in the United States while the appropriate federal agency reaches its decision. Some of these applicants are also in removal proceedings before the immigration court. The federal government is aware of all of these applicants and may ultimately make removal determinations. Iowa's law thwarts fair adjudication of those applications.

For example: Just as it would thwart federal law if Iowa were to arrest and seek to deport a person to whom the federal government had granted asylum, it would similarly thwart federal

law if Iowa were to arrest and deport a person for whom the federal government was in the process of determining whether to grant asylum. In order for the federal government to initiate the process of determining asylum eligibility, at least with respect to individuals stopped at or near the border and placed in expedited removal proceedings, it must have already found "a significant possibility . . . that the [noncitizen] can establish" that eligibility. 8 C.F.R. § 208.30(e)(2). Yet Iowa asserts the right to frustrate that process by arresting, imprisoning, and deporting the persons for whom federal officials are determining eligibility for relief.

The same would be true, say, if Iowa were to arrest and deport a juvenile whom the federal government were considering for SIJ classification, or a trafficking victim whom the federal government were considering for a T visa, or a person whom the federal government were considering for Temporary Protected Status. Iowa's law appears to contemplate short-circuiting all of these processes by arresting and deporting people before the federal government can complete its process of determining how federal law demands that they be treated.

## CONCLUSION

For these reasons, amicus urges the Court to grant plaintiffs' motion for declaratory and injunctive relief.

*Respectfully submitted,*

*/s/ Alexander Smith*

Alexander Smith          AT0011363
Benjamin D. Bergmann     AT0009469
2910 Grand Avenue
Des Moines, Iowa 50312
(515) 284-5737
asmith@parrishlaw.com
bbergmann@parrishlaw.com

## <u>PROOF OF SERVICE</u>

The undersigned certifies that the foregoing instrument was **electronically filed** using the CM/ECF system on May 10, 2024. Copies have been provided to all registered CM/ECF users.

_/s/ Alexander Smith_
_____