# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

|  |  |
|---|---|
| IOWA MIGRANT MOVEMENT FOR JUSTICE, et al., | Case No. 4:24-cv-00161-SHL-SBJ |
| *Plaintiffs*, |  |
| v. |  |
| BRENNA BIRD, in her official capacity as Attorney General of Iowa, et al., |  |
| *Defendants*. |  |

## DEFENDANT'S RESISTANCE TO PLAINTIFFS'

## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ..................................................................................................................... 5

    I.    Plaintiffs Are Not Likely To Succeed On The Merits. ................................................. 5

        A.    SF2340 does not apply to lawful permanent residents. ............................................ 5

        B.    Plaintiffs' claims are nonjusticiable. ...................................................................... 10

        C.    Federal immigration law does not preempt SF2340. ............................................... 15

    II.    The Other Factors Weigh Against A Preliminary Injunction. ..................................... 24

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*281 Care Comm. v. Arneson,*
  638 F.3d 621 (8th Cir. 2011) ............................................................................ 10

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach,*
  469 F.3d 129 (D.C. Cir. 2006) ........................................................................... 13

*Animal Legal Def. Fund v. Reynolds,*
  297 F.Supp.3d 901 (S.D. Iowa 2018) .................................................................. 13

*Arizona v. United States,*
  567 U.S. 387 (2012) .................................................. 1, 15, 17, 19, 20, 22, 23, 24

*Arkansas Times LP v. Waldrip as Tr. Of Univ. of Ark. Bd. of Trustees,*
  37 F.4th 1386 (8th Cir. 2022) ........................................................................... 25

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015) .................................................................................... 14, 15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................... 12, 14

*California v. ARC Am. Corp.,*
  490 U.S. 93 (1989) ........................................................................................... 17

*California v. Texas,*
  593 U.S. 659 (2021) .......................................................................................... 10

*California v. Zook,*
  336 U.S. 725 (1949) .......................................................................................... 20

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
  520 U.S. 564 (1997) .......................................................................................... 16

*Chamber of Comm. v. Whiting,*
  563 U.S. 582 (2011) .................................................................................... 18, 22

*Chy Lung v. Freeman,*
  92 U.S. 275 (1876) ........................................................................................... 17

*Claflin v. Houseman,*
  93 U.S. 130 (1876) ............................................................................................. 9

*Clapper v. Amnesty Int'l, USA,*
  568 U.S. 398 (2013) .................................................................................... 10, 14

*Cordova-Soto v. Holder,*
  659 F.3d 1029 (10th Cir. 2011) ......................................................................... 18

*DeCanas v. Bica,*
  424 U.S. 351 (1976) .............................................................................. 16, 17, 18

*Dept. of Educ. v. Brown,*
  600 U.S. 551 (2023) .......................................................................................... 10

*Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.,*
  28 F.3d 1268 (D.C. Cir. 1994) ........................................................................... 13

*Florida v. United States,*
  660 F. Supp. 3d 1239 (N.D. Fla. 2023) .............................................................. 19

*Furlow v. Belmar,*
  52 F.4th 393 (8th Cir. 2022) .......................................................................... 5, 24

## TABLE OF AUTHORITIES (cont'd)

*Georgia Latino All. for Hum. Rts. v. Governor of Georgia*,
    691 F.3d 1250 (11th Cir. 2012) ............................................................ 24

*Gilbert v. Minnesota*,
    254 U.S. 325 (1920) ............................................................................ 20

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ............................................................................ 11

*Huck v. Wyeth, Inc.*,
    850 N.W.2d 353 (Iowa 2014) ................................................................ 7

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) .............................................................................. 7

*Jet Midwest Int'l Co., v. Jet Midwest Grp., LLC*,
    953 F.3d 1041 (8th Cir. 2020) ............................................................... 4

*Juidice v. Vail*,
    430 U.S. 327 (1977) ............................................................................ 25

*Kansas v. Garcia*,
    589 U.S. 191 (2020) ........................................................ 16, 17, 20, 21

*Keller v. City of Fremont*,
    719 F.3d 931 (8th Cir. 2013) ........................................................ 16, 24

*Kucera v. Baldazo*,
    745 N.W.2d 481 (Iowa 2008) .......................................................... 9, 23

*Magellan Health Servs., Inc. v. Highmark Life Ins.*,
    755 N.W.2d 506 (Iowa 2008) ................................................................ 7

*Mayor, Alderman and Commonalty of City of New York v. Miln*,
    36 U.S. (11 Pet.) 102 (1837) .......................................................... 17, 25

*Merrill Lynch, Pierce, Fenner & Smith v. Ware*,
    414 U.S. 117 (1973) ................................................................ 5, 19, 24

*Missouri Protection & Advoc. Servs., Inc. v. Carnahan*,
    499 F.3d 803 (8th Cir. 2007) ............................................................... 11

*Missouri v. Biden*,
    52 F.4th 362 (8th Cir. 2022) ............................................................... 10

*Nat'l Fed. of Blind of Mo. v. Cross*,
    184 F.3d 973 (8th Cir. 1999) ............................................................... 13

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ......................................................................... 25

*Org. for Black Struggle v. Ashcroft*,
    978 F.3d 603 (8th Cir. 2020) ............................................................... 25

*Parker v. Brown*,
    317 U.S. 341 (1943) ........................................................ 15, 16, 19

*Pennsylvania v. Nelson*,
    350 U.S. 497 (1956) ........................................................................... 19

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
    530 F.3d 724 (8th Cir. 2008) .......................................................... 4, 24

*Plyler v. Doe*,
    457 U.S. 202 (1982) ........................................................................... 18

*Powell v. Noble*,
    798 F.3d 690 (8th Cir. 2015) ............................................................... 24

*Recognition Network, Inc. v. Hutchinson*,
    803 F.3d 952 (8th Cir. 2015) ............................................................... 11

## TABLE OF AUTHORITIES (cont'd)

*Religious Sisters of Mercy v. Becerra,*
   55 F.4th 583 (8th Cir. 2022) ................................................................ 11, 12

*Rice v. Santa Fe Elevator Corp.,*
   331 U.S. 218 (1947) ........................................................................... 7, 16

*Simon v. E. Ky. Welfare Rts. Org.,*
   426 U.S. 26 (1976) .................................................................................. 13

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ......................................................................... 10, 15

*State v. Abrahamson,*
   696 N.W.2d 589 (Iowa 2005) .............................................................. 7, 23

*State v. Rivera,*
   997 N.W.2d 890 (Iowa App. 2023) .......................................................... 2

*Steffel v. Thompson,*
   415 U.S. 452 (1974) ............................................................................... 10

*Testa v. Katt,*
   330 U.S. 386 (1947) ............................................................................... 25

*Texas v. Biden,*
   20 F.4th 928 (5th Cir. 2021) ................................................................. 19

*Texas v. DHS,*
   2023 WL 8285223 (W.D. Tex. Nov. 29, 2023) ......................................... 2

*Truax v. Raich,*
   239 U.S. 33 (1915) ................................................................................. 17

*United States v. Alabama,*
   691 F.3d 1269 (11th Cir. 2012) ............................................................ 24

*United States v. Salerno,*
   481 U.S. 739 (1987) .......................................................................... 5, 24

*United States v. Texas,*
   97 F.4th 268 (5th Cir. 2024) ................................................................. 15

*Va. Uranium, Inc. v. Warren,*
   587 U.S. 761 (2019) ............................................................................... 16

*Wash. State Grange v. Wash. State Rep. Party,*
   552 U.S. 442 (2008) ............................................................................... 24

*WaterLegacy v. USDA Forest Serv.,*
   2019 WL 4757663 (D. Minn. Sept. 30, 2019) ......................................... 12

*Watkins Inc. v. Lewis,*
   346 F.3d 841 (8th Cir. 2003) ................................................................... 4

*Weissenberger v. Iowa Dist. Court of Warren Cty.,*
   740 N.W.2d 431 (Iowa 2007) .............................................................. 9, 23

*Whole Woman's Health v. Jackson,*
   595 U.S. 30 (2021) .......................................................................... 15, 25

*Wyeth v. Levine,*
   555 U.S. 555 (2009) ......................................................................... 16, 17

*Younger v. Harris,*
   401 U.S. 37 (1971) ................................................................................. 10

*Zanders v. Swanson,*
   573 F.3d 591 (8th Cir. 2009) ................................................................. 10

## TABLE OF AUTHORITIES (cont'd)

### Constitutional Provisions

U.S. Const. art. I, § 8 ........................................................................................................ 1

U.S. Const. art. VI ...................................................................................................... 14, 15

### Statutes

8 U.S.C. § 1101 ........................................................................................................ 7, 22

8 U.S.C. § 1182 ...................................................................................................... 3, 6, 7

8 U.S.C. § 1227 ............................................................................................................ 12

8 U.S.C. § 1229a ...................................................................................................... 3, 6

8 U.S.C. § 1229c ............................................................................................................ 4

8 U.S.C. § 1231 ...................................................................................................... 6, 18

8 U.S.C. § 1324 ............................................................................................................ 22

8 U.S.C. § 1326 ................................................................................ 3, 4, 6, 18, 20, 21

8 U.S.C. § 1357 ............................................................................................................ 22

8 U.S.C. § 1373 ...................................................................................................... 18, 22

8 U.S.C. § 1644 ............................................................................................................ 22

18 U.S.C. § 758 ............................................................................................................ 22

18 U.S.C. § 3559 ............................................................................................................ 3

18 U.S.C. § 3571 ............................................................................................................ 3

22 U.S.C. § 7105 .......................................................................................................... 22

Iowa Code § 4.12 .............................................................................................. 4, 19, 24

Iowa Code § 4.4 .............................................................................................................. 9

Iowa Code § 718C ............................................................... 3, 4, 5, 7, 8, 9, 10, 14, 18, 21, 23

Iowa Code § 902.9 ........................................................................................................ 14

Iowa Code § 903.1 .................................................................................................... 3, 14

### Regulations

8 C.F.R. § 245.23 ............................................................................................................ 6

19 C.F.R. § 101.3 ............................................................................................................ 8

### Other Authorities

1 Am. Jur. 2d *Abatement, Survival, and Revival*, § 3 (1994) ........................................ 9

Black's Law Dictionary (11th ed. 2019) ...................................................................... 8

Chuck Grassley, *As Biden Administration Rolls Back Immigration Enforcement, Ernst, Grassley, Colleagues Reintroduce 'Sarah's Law' Ahead of the Fifth Anniversary of Sarah Root's Death* (Jan. 28, 2021) *available at* perma.cc/Y26S-D7K5 ...................................................................................................... 2

Conner Hendricks, *Human trafficking is on the rise*, KCRG, Jul. 28, 2023 ................ 3

Hannah Rodriguez, *Crime 'hidden in plain sight': Survivor advocates explain human trafficking can be anywhere and what makes I-80 a target*, WQAD, Mar. 5, 2020 ................................................ 2, 3

John Gramlich, *Migrant encounters at the U.S.-Mexico border hit a record high at the end of 2023*, Pew Research Center (Feb. 15, 2024) ................................................................................ 2

Joni Ernst, *Ernst Calls on Senate to Pass Sarah's Law* (Mar. 7, 2024), *available at* perma.cc/FV2P-6JHG ...................................................................................................... 2

**TABLE OF AUTHORITIES (cont'd)**

Legislative Servs. Agency, Fiscal Servs. Div., Fiscal Note: SF2340 (May 8, 2024) *available at*
  perma.cc/ZFT2-XNFP.........................................................................................................8
Marti Sivi, *Iowa View: State is at a crossroads for sex-trafficking*, Des Moines Register, Jan. 6, 2014 .........2
*Oxford English Dictionary* (December 2023), doi.org/10.1093/OED/3243407940.............................6
The White House, *Statement from President Joe Biden on the Bipartisan Senate Border Security*
  *Negotiations* (Jan. 26, 2024)..............................................................................................1
Todd Bensman, *Overrun: How Joe Biden Unleashed The Greatest Border Crisis In U.S. History* (2023) ........2
*Webster's Second New Int'l Dictionary* (1934)..........................................................................6

## INTRODUCTION

"Imagine a provision—perhaps inserted right after Art. I, § 8, cl. 4, the Naturalization Clause—which included among the enumerated powers of Congress 'To establish Limitations upon Immigration that will be exclusive and that will be enforced only to the extent the President deems appropriate.' The delegates to the Grand Convention would have rushed to the exits." *Arizona v. United States*, 567 U.S. 387, 436 (2012) (Scalia, J., concurring in part and dissenting in part). But that exclusive federal power is what Plaintiffs advocate for here.

Iowa's new law, SF2340, codifies a criminal analogue to the federal crime of illegal reentry. SF2340 does not create new standards governing alien admissibility or removability nor does it regulate alien registration. Every act punished is already a federal crime, so it creates no new implications on foreign relations. And it does not ask Iowa officials to remove illegal aliens from the country—or even from Iowa. Arguments to the contrary ignore the law's plain text.

SF2340 does not offend federal law. The Supreme Court has expressly stated that States retained sovereign police power related to immigration. So long as States do not use the power to regulate admissibility or removal standards or alien registration, and so long as the state crime criminalizes conduct already criminalized federally, the Supreme Court has found no constitutional flaws.

Plaintiffs meanwhile ask the Court to extend implied preemption—already tenuous—to new limits to then enjoin SF2340 in full. But Plaintiffs lack standing nor even a cause of action. Particularly given this case—a pre-enforcement, facial challenge, where Plaintiffs must establish it is likely that there is no constitutional application of the law—the Court should decline the invitation.

## BACKGROUND

According to President Biden, our Nation is in the throes of an unprecedented illegal immigration "crisis." The White House, *Statement from President Joe Biden on the Bipartisan Senate Border Security Negotiations* (Jan. 26, 2024). Rather than try to fix the crisis, he has taken a different tack. Now, illegal border crossings have hit record highs over the past four years, with up to 250,000 people

apprehended at the border each month. John Gramlich, *Migrant encounters at the U.S.-Mexico border hit a record high at the end of 2023*, Pew Research Center (Feb. 15, 2024). An enormous uptick "from a comparatively paltry 458,000 in 2020." *Texas v. DHS*, 2023 WL 8285223, at *3 (W.D. Tex. Nov. 29, 2023). The federal government is "derelict in enforcing" its "statutory duties." *Id.* at *14.

Organized criminal organizations have noticed. Human trafficking "has become an incredibly lucrative enterprise for the Mexican drug cartels," and "the infrastructure built by the cartels for human cargo can also be used to ship illegal substances, namely fentanyl." *Id.* at *3. Indeed, human trafficking proceeds may have surpassed those from drug trafficking. *See* Todd Bensman, *Overrun: How Joe Biden Unleashed The Greatest Border Crisis In U.S. History* 29–32, 193 (2023).

This illegal immigration crisis has led to Iowans' lives being "cut short by" illegal aliens "who disregard[] the rule of law." Chuck Grassley, *As Biden Administration Rolls Back Immigration Enforcement, Ernst, Grassley, Colleagues Reintroduce 'Sarah's Law' Ahead of the Fifth Anniversary of Sarah Root's Death* (Jan. 28, 2021) *available at* perma.cc/Y26S-D7K5. On the night of Sarah Root's college graduation, she was killed by an illegal alien in a drunk driving accident. *Id.* Just two years later, "Mollie Tibbetts went for an evening run . . . in her hometown of Brooklyn, Iowa, and seemingly vanished." *State v. Rivera*, 997 N.W.2d 890, *1 (Iowa App. 2023) (table). The reason she vanished: an illegal alien killed her before dumping her body in a cornfield. *Id.* at *3. Tibbetts had just finished her first year at the University of Iowa. *Id.* at *1. In response, Iowa's U.S. senators begged the federal government to do its job and "start enforcing the law" to protect Iowans. *See* Grassley, *supra*; Joni Ernst, *Ernst Calls on Senate to Pass Sarah's Law* (Mar. 7, 2024), *available at* perma.cc/FV2P-6JHG.

Iowa lies at the crossroads for human trafficking, with Interstates 35 and 80 intersecting creating "an easy way to arrive and disappear fast in four directions." Marti Sivi, *Iowa View: State is at a crossroads for sex-trafficking*, Des Moines Register, Jan. 6, 2014; Trafficking Education, *Wings of Refuge*, perma.cc/ZMD3-HKPW (accessed May 31, 2024); Hannah Rodriguez, *Crime 'hidden in plain sight':*

*Survivor advocates explain human trafficking can be anywhere and what makes I-80 a target*, WQAD, Mar. 5, 2020. And human trafficking is on the rise. Conner Hendricks, *Human trafficking is on the rise*, KCRG, Jul. 28, 2023. The illegal immigration crisis only adds fuel to this fire.

The Legislature recognized a need for a solution. Against the federal decision not to enforce immigration laws, leading to the exploding illegal immigration crisis, the Legislature authorized an Iowa criminal analogue to federal criminal illegal entry. *See* SF2340 (to be codified at Iowa Code ch. 718C). That law is set to take effect on July 1.

SF2340 depends on an adverse federal immigration determination before Iowa can act. SF2340 makes it a crime to enter, attempt to enter, or be found in Iowa after having been "excluded, deported, or removed," or having departed the United States "while an order of exclusion, deportation, or removal is outstanding." Iowa Code § 718C.2(1). The offense is punishable by up to two years in prison or a fine between $855.00 and $8,540.00, or both. Iowa Code §§ 718C.2(2), 903.1(2). After conviction, a judge must issue an order to return, specifying how the illegal alien will be transported to a port of entry and which state official will monitor compliance. *Id.* § 718C.4. As is true with all court orders, compliance is mandatory. *See id.* § 718C.5. An alien who does not comply with an order to return commits a felony. *Id.*.

That tracks the federal illegal reentry crime. Congress made it a crime for an alien to reenter the country after having been "denied admission," been involuntarily "removed," or having departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a). An alien who illegally reenters "shall" be imprisoned for up to two years, fined up to $250,000, or both. *Id.*; 18 U.S.C. §§ 3559(a)(5), 3571(b)(3). Congress has directed immigration officials to "order removed from the United States without further hearing or review" any alien who lacks a "valid entry document." *Id.* §§ 1225(b)(1)(A)(i), 1182(a)(7). An alien who does not comply with a removal order commits a felony. *Id.* §§ 1253(a)(1), 1229a(c)(5); *see* 18 U.S.C. § 3559(a)(5).

Under both laws, illegal aliens may agree to voluntary departure, Iowa Code § 718C.4(1)–(3); 8 U.S.C. § 1229c, and may face harsher penalties under certain aggravating circumstances. Iowa Code § 718C.2(2); 8 U.S.C. § 1326(b).

Under SF2340, a court may not abate a prosecution "on the basis that a federal determination regarding the immigration status of the person is pending or will be initiated." Iowa Code § 718C.6. But it allows abatement upon a final determination of an alien's lawful federal immigration status.

In this suit two individual plaintiffs and a membership organization facially challenge SF2340. MMJ is an organization that provides "legal service[s] and advocacy" for "immigrants and refugees" to "protect their foundational rights" and receive legal benefits. Dkt. 1 ¶¶ 10–11. Jane Doe and Elizabeth Roe are "lawful permanent resident[s]" who have permission to be in the United States. *Id.* ¶¶ 18–19. Plaintiffs seek an injunction based on just one of their two claims, arguing that federal law preempts SF2340. *Id.* ¶¶ 79–86.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy," and the movant bears the burden to establish it is warranted. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). When determining whether to issue a preliminary injunction, courts consider: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Jet Midwest Int'l Co., v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020). Because Plaintiffs seek to enjoin enforcement of a state statute, they must satisfy the more rigorous threshold requirement that they are "likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008).

Iowa statutes are presumed severable. Iowa Code § 4.12. And rather than enjoin enforcement of entire State schemes, courts "reconcile the operations of both statutory schemes with one another."

*Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 127 & n.8 (1973) (collecting cases dating back over 100 years supporting this approach). State statutes should be preempted "only to the extent necessary to protect the achievement of the aims of the [federal law]." *Id.*

## ARGUMENT

**I.      Plaintiffs Are Not Likely To Succeed On The Merits.**

Plaintiffs must show there is no "circumstance" in which a statute can be constitutionally applied to succeed on a facial challenge. *Furlow v. Belmar*, 52 F.4th 393, 400 (8th Cir. 2022); *see United States v. Salerno*, 481 U.S. 739, 745 (1987).

**A.      SF2340 does not apply to lawful permanent residents.**

Before diving into Plaintiffs' claims, it is important to understand what SF2340 does: it does not apply to those lawfully admitted in the United States; it does not provide for Iowa officials to remove aliens from the United States; and if a lawful resident is somehow charged under SF2340, the alien's final lawful federal immigration status would mandate abatement of prosecution.

*Section 2: Iowa Illegal Reentry.* Aliens commit an illegal reentry offense if they "enter[], attempt[] to enter, or [are] at any time found" in Iowa:

> under any of the following circumstances:
> a. The person has been denied admission to or has been excluded, deported, or removed from the United States.
> b. The person has departed from the United States while an order of exclusion, deportation, or removal is outstanding.

Iowa Code § 718C.2. This section details which federal immigration statuses, prevailing at the time the alien enters, attempts to enter, or is found in Iowa, trigger SF2340. The controlling phrase "enters . . . under any of the following circumstances" reveals that the immigration statuses—i.e., "denied admission," "excluded," "deported," "removed," or "departed" while order to leave is outstanding—must be the prevailing condition when the alien is found in Iowa.

Indeed, the most natural reading of "under any of the following circumstances" is that the listed

scenarios must be the alien's current immigration status. The definition of "circumstance" confirms this. Particularly when used in the phrase "under the circumstance," it means the "'condition or state of affairs' surrounding and affecting an agent; esp. the external conditions prevailing at the time." Circumstance, *Oxford English Dictionary* (December 2023), doi.org/10.1093/OED/3243407940; *see* Circumstance, *Webster's Second New Int'l Dictionary* (1934) ("One of the conditions under which an event takes place or with respect to which a fact is determined; a condition, fact, or event."). The relevant inquiry becomes what federal immigration "condition[] [is] prevailing at the time."

The statute is not naturally read to cover an alien who was at one point removable without regard for an intervening event altering her status. An alien who was deported years ago and has since received permission to reenter with a visa, did not have a "deported" "condition" or "state of affairs" when she reentered the country. Her *prevailing* condition at reentry was lawful visa-holder. Indeed, she would describe her prevailing immigration "condition" or "state of affairs" as lawful or visa-holder. She would not report her prevailing immigration condition as "deported."

SF2340 illegal reentry determinations are thus made based on federal immigration statuses like "excluded" or "deported." Under federal law, aliens who have received federal government consent to reenter have not reentered illegally, nor are they "excluded" or "deported." *See* 8 U.S.C. § 1326(a)(2). Contrary arguments, *see* No. 4:24-cv-00161, Dkt. 35 at 2 & n.1, depend on a reading of federal consent-to-reenter law that is contrary to how the federal government and Iowa applies laws.

Removal requires an alien's departure from the country and—particularly important here—bars reentry. *See* 8 U.S.C. §§ 1229a(c)(5), (e)(2), 1231, 1182(a)(9). Federal consent removes that reentry bar to allow readmission. *See, e.g., id.* §§ 1182(a)(9)(A)(iii), (C)(ii) (consent waives removal-based inadmissibility); § 1182(a)(9)(C)(iii) (Violence Against Women Act waiver); 8 C.F.R. § 245.23 (waiver for human trafficking victims); *see* MMJ Pls.' Br. at 3–4, 12. In other words, consent nullifies the reentry bar, regardless of whether it is characterized as waiving prior removal or as "allow[ing] for return

notwithstanding the grounds for inadmissibility." Dkt. 35 at 2 n.1.

Other sections reenforce that approach. Under immigration statutes, "admission" means the lawful entry of an alien into the United States." 8 U.S.C. § 1101(a)(13). That means the Attorney General's "consent[] to the alien's admission," *id.* § 1182(a)(9), is consent to reapply for "lawful entry." Put another way, consent gives an alien the ability to seek permission to reenter lawfully—not subject to federal laws prohibiting *illegal* reentry like SF2340.

So where prior exclusion, deportation, or removal is waived, there is no prevailing reentry bar to trigger SF2340. That alien's prevailing immigration status no longer falls under SF2340. A once-deported, now-legal alien did not reenter the country under any prohibited immigration condition. *See* Iowa Code § 718C.2. Rather, she was deported, received waiver of that inadmissibility, then reentered under a waiver of prior inadmissibility. That intervening event makes all the difference.

Not only is that the plain meaning, but any interpretation allowing Iowa to prosecute persons lawfully in the United States would regulate admission and removal standards—the sole province of the federal government. Yet Plaintiffs argue for just such a reading. *See* Dkt. 9-1 at 5–6, 13.

Even if Plaintiffs' interpretation were plausible, it is incorrect. Canons of construction instruct courts faced with multiple plausible readings to interpret a statute to avoid constitutional claims, *see Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018); *State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005), and to apply a presumption against preemption, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (presumption against preemption means starting "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress"); *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 363 (Iowa 2014) (Iowa courts favor narrow reading to avoid preemption); *Magellan Health Servs., Inc. v. Highmark Life Ins.*, 755 N.W.2d 506, 513 (Iowa 2008). So even if this Court considers Plaintiffs' reading plausible, it should avoid the constitutional claim, presume no preemption, and apply the State's interpretation.

*Section 4: Order to Return.* An Order to Return under SF2340 must specify how the illegal alien will be transported to a port of entry and which state official will monitor compliance. Iowa Code § 718C.4. The order details how the illegal alien will be taken to the port of entry, but nowhere beyond that point. Once at the port of entry, removal is a question for federal immigration officers.

SF2340 does not allow Iowa officials to remove a convicted illegal alien from Iowa or the United States. It does not give state officials authority to enforce the Order to Return, and it requires only that the official report the order's issuance to the Department of Public Safety. Iowa Code §§ 718C.4(5)–(7). The law also allows charges to be dismissed if the person agrees to leave the State voluntarily; it does not authorize state officials to effect that removal. Iowa Code § 718C.4.

Indeed, federal confusion over "how Iowa intends to accomplish removal," No. 4:24-cv-00162, Dkt. 7-1 at 8 n.2, illustrates the logical error. Iowa does not intend to "accomplish" removal. It cannot. There are no direct international flights from Iowa ports of entry. *See* 19 C.F.R. § 101.3 (Iowa ports of entry: Des Moines International Airport and Quad Cities International Airport).

SF2340's legislative analysis underscores that the law was not intended to provide for State-facilitated removal. A May 2024 fiscal analysis examined the law's potential prison, probation, parole, and other correctional costs. *See* Legislative Servs. Agency, Fiscal Servs. Div., Fiscal Note: SF2340, at 2 (May 8, 2024) *available at* perma.cc/ZFT2-XNFP. It also considered "the cost to transport an individual to a port of entry." *Id.* It did not analyze the cost to transport an alien beyond the port of entry and out of the State. *Id.* There was no need to analyze removal costs because the law removes no one—it at most authorizes State authorities to hand illegal aliens over to federal immigration officers at one of Iowa's ports of entry.

*Section 6: Abatement.* The Abatement Section states: "A court may not abate the prosecution . . . on the basis that a federal determination regarding the immigration status of the person is pending or will be initiated." Iowa Code § 718C.6. It is limited to pending determinations or those not yet initiated. It

does not apply to *final* federal determinations. *See Kucera v. Baldazo*, 745 N.W.2d 481, 487 (Iowa 2008) ("When interpreting laws, we are guided by the rule of 'expressio unius est exclusio alterious.'").

The meaning of "abatement" widens the effect of Section 6. "Abatement" means "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." *Abatement*, Black's Law Dictionary (11th ed. 2019). The term "abatement" is distinguishable from "stay." 1 Am. Jur. 2d *Abatement, Survival, and Revival*, § 3 (1994). When "grounds for abatement of an action exist, the abatement of the action is a matter of right," whereas a stay is discretionary. *Id.* So "in proper circumstances a court may stay a proceeding pending the outcome of another proceeding"—such as a pending federal immigration determination—and may do so even though "a strict plea in abatement could not be sustained." *See id.*

Put differently, Section 6 is inapplicable to aliens with finally determined lawful status, like asylees, visa holders, and other lawful permanent residents. In the event charges are inadvertently filed, nothing prevents a legal alien from asserting her *final* federal immigration status as a defense, and such final determinations would bind Iowa courts. *See Weissenberger v. Iowa Dist. Court of Warren Cty.*, 740 N.W.2d 431, 436 (Iowa 2007) ("It has long been held that the laws of the United States are "just as much binding on the citizens and courts [of the States] as State laws are.") (quoting *Claflin v. Houseman*, 93 U.S. 130, 136 (1876)); *see also* Iowa Code § 4.4(1); Iowa Code § 4.4(3).

In total, Iowa law shows that a final federal determination of lawful status mandates abatement under SF2340. But if an illegal alien charged under SF2340 has or will have a pending asylum case, then circumstances may warrant a discretionary stay pending any final determination of lawful immigration status. Even if the alien does not get a stay and is convicted or agrees to voluntary departure, the Order to Return identifies how she would be brought to one of Iowa's ports of entry. *See* Iowa Code § 718C.4. No Iowa official could remove her from the country. Once at the port of entry, Iowa officers' obligation ceases and federal officers would make the ultimate removal

determination; that determination necessarily includes assessing any relevant legal defenses.

### B.    Plaintiffs' claims are nonjusticiable.

Article III standing is a threshold inquiry. *See Spokeo, Inc. v. Robins¸* 578 U.S. 330, 338 (2016) (detailing standing requirements). This Court need not proceed to the merits of Plaintiffs' claims because no Plaintiff can establish standing. *Dept. of Educ. v. Brown*, 600 U.S. 551, 560–61 (2023).

#### 1.    Doe and Roe lack standing because they are lawful permanents residents.

Plaintiffs plead no injury in fact—no "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Missouri v. Biden*, 52 F.4th 362, 368 (8th Cir. 2022) (quotations and citation omitted).

Flawed statutory interpretation cannot create standing. Doe and Roe allege they are lawful permanent residents. *See* Dkt. 1 ¶¶ 18–19. SF2340 does not apply to them; there is no actual or imminent harm where there is no credible threat of prosecution. *See California v. Texas*, 593 U.S. 659, 670 (2021). More, because Doe and Roe have final, lawful federal immigration determinations, any inadvertent prosecution must abate. *See* Iowa Code § 718C.2. Doe and Roe thus lack injury that is either concrete and particularized or actual or imminent.

Subjective fears cannot establish standing. *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009). "[I]nflicting harm on [oneself] based on [one's] fears of hypothetical future harm that is not certainly impending" also does not establish standing. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 416 (2013). Neither do "imaginary or speculative" fears of state prosecution. *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). *Compare Steffel v. Thompson* 415 U.S. 452, 459 (1974) (petitioner could challenge statute because police warned him to stop the proscribed conduct or else he would be prosecuted), *with Younger v. Harris*, 401 U.S. 37, 42 (1971) (no genuine controversy existed as to plaintiffs who were never threatened with prosecution and could allege only that they "fe[lt] inhibited" by the law).

Doe and Roe do not allege actual threats of prosecution. Plaintiffs submit a declaration from

Marshalltown Chief of Police, Michael Tupper, confirming immigrants' speculative and imaginary fears of prosecution. *See* Exh. D. Chief Tupper, at ¶¶ 7–8. But misinformed fears do not create a threat of prosecution, even from official sources.

> 2. *Plaintiffs lack standing to challenge Section 4.*

A favorable decision will not redress Plaintiffs' alleged Section 4 harm. Section 4 authorizes judges to issue return orders. But Plaintiffs seek to enjoin Defendant's enforcement of Section 4. So if this Court enjoins only Section 4, then non-party judges could still issue return orders because the injunction would run against only Defendant. *See Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) ("A district court has no authority to enjoin the statute; an injunction would run only against the defendants in the case."). Plaintiffs thus lack standing to challenge Section 4.

> 3. *MMJ lacks direct and organizational standing.*

A membership organization may sue on behalf of its members if, in relevant part, "(a) its members would otherwise have standing to sue in their own right; [and] (b) the interests it seeks to protect are germane to the organization's purpose." *Missouri Protection & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 809 (8th Cir. 2007). It must specifically identify at least one member who has suffered the harm. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 & n.12 (8th Cir. 2022).

A membership organization has direct standing if it establishes its own injury, traceability, and redressability. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–379 (1982). A diversion-of-resources must be certainly impending and caused by the law. *See Digit. Recognition*, 803 F.3d at 957–958.

MMJ claims organizational standing by way of supposed harms suffered by two of its pseudonymous members, "Anna" and "David." And it claims direct standing under the theory that the law causes it to divert resources and impedes its mission. MMJ fails on both fronts.

1. MMJ fails to identify a member who may suffer harm if SF2340 takes effect. Like Doe and Roe, SF2340 is not enforceable against Anna. Anna, though previously removed, returned and applied for

and received asylum. *See* Dkt. 1 ¶ 58. The federal government has authorized Anna to be here, so she cannot be charged under SF2340. MMJ cannot assert standing on her behalf.

MMJ similarly fails to establish standing through David because it fails to plead his injury with particularity and plausibility. MMJ instead asks this Court to speculate and assume certain facts. *Contra Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). But "labels and conclusions or a formulaic recitation of the elements of a cause of action," *id.*, is all MMJ has to say as to David.

The disparity between David's allegations and the other individuals' is striking. The Complaint names Anna 15 times, Doe 12 times, and Roe seven. *Id.* But David is named just three times. *See* Dkt. 1 ¶¶ 14, 60. Worse, most of the allegations related to David have zero relevance to SF2340.

MMJ does not allege that David lives in Iowa or is here illegally. With Doe, Roe, and Anna, Plaintiffs pleaded that each person lives in Iowa, and expressly pleaded their federal immigration status. *See, e.g., id.* ¶ 18 (Doe), ¶ 19 (Roe), ¶ 58 (Anna). But for David, Plaintiffs pleaded no particular or plausible fact relating to his immigration status. *Id.* ¶ 14. He previously was inadmissible, but so were Anna, Doe, and Roe. It is not a plausible inference to assume unchanged status—particularly when he has U.S.-citizen relatives and a U.S. citizen partner. *Id.* ¶ 60. David cannot give MMJ standing, nor can any of MMJ's other 2,300 unidentified members. *See Religious Sisters of Mercy*, 55 F.4th at 601 & n.12 (organizational standing requires identifying members and their injuries).

2. MMJ's interests it seeks to protect here are not germane to its organizational purpose. MMJ "provide[s] legal services" and education to help aliens access "benefits for which they are eligible," "maintain . . . lawful immigration status," and "avoid . . . removal." Dkt. 1 ¶¶ 11, 16, 61; *cf.* 8 U.S.C. § 1227(a) (setting standards for removal of aliens "in and admitted to the United States").

Nothing in SF2340 changes standards for lawful status. And nothing hinders or prohibits MMJ's ability to provide legal services consistent with its mission. *See WaterLegacy v. USDA Forest Serv.*, 2019 WL 4757663, at *10 (D. Minn. Sept. 30, 2019) (no standing for environmental group because drop in

value of member's land was not a harm germane to group's mission to protect the environment).

Plaintiffs may believe that SF2340 will result in member prosecution. But that does not give MMJ organizational standing. They argue that Iowa has no authority to regulate the field of immigration. But that is not part of MMJ's organizational mission. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 (1976) ("[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III.").

3. MMJ lacks standing because its diversion-of-resources is self-inflicted. *See Animal Legal Def. Fund v. Reynolds*, 297 F.Supp.3d 901, 913 (S.D. Iowa 2018). Direct standing arises "when there is a concrete and demonstrable injury to an organization's activities which drains its resources and is more than simply a setback to its abstract social interests." *Nat'l Fed. of Blind of Mo. v. Cross*, 184 F.3d 973, 979 (8th Cir. 1999). There is a difference between alleging an organization's "activities have been impeded" and alleging the "mission has been compromised." *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006). Harm from a plaintiff's budgetary choices, and not from a defendant's conduct, is self-inflicted and insufficient. *See Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994).

MMJ alleges two harms, Dkt. 1, ¶¶ 61–74. First, MMJ will divert work to address SF2340, which will impact "grant funding that requires specific deliverables, including the number of clients served." *Id.* ¶ 61. Second, SF2340 "will hinder" and divert time from "MMJ's advocacy work." *Id.* ¶ 68.

But MMJ's alleged harms are either self-inflicted or align with existing services. Neither creates a diversion-of-resources theory of particularized harm. *See Fair Emp't Council*, 28 F.3d at 1277 (diversion of resources to investigate suspected vendor housing violations not an injury in fact).

MMJ is choosing to expend resources to provide SF2340 services and fails to assert a sufficient nexus between the law and its increased workload. For example, MMJ asserts harm due to FOIA requests for client immigration files, Dkt. 1 ¶ 62, but fails to trace this to SF2340. MMJ has provided

immigration services for years but now says federal records are needed only thanks to SF2340.

Next, MMJ claims it will divert resources to expedite parole applications, "which usually take about one year to adjudicate," to avoid clients being forced to leave the country thus risking their pending immigration application. Dkt. 1 ¶ 64. But removal would occur within this one-year window only via voluntary departure. *See* Iowa Code § 718C.4(3)(a); *see also* Iowa Code §§ 718C.2, 903.1(2), 902.9(1). And again, SF2340 does not remove aliens from the United States by State authorities.

Similarly, SF2340 does not directly impede MMJ's "grant-funded work assisting victims of crime and trafficking with filing U and T visa applications." Dkt. 1 ¶ 67. MMJ asserts it may not satisfy grant obligations if its clients are "afraid to work with local law enforcement" which is "[a] prerequisite to obtaining a U or T visa." But MMJ cannot premise its standing based on speculation about the decisions of third-party actors. *See Clapper*, 568 U.S. at 414.

Finally, MMJ omits basic facts about its implied jeopardized-funding theory. A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. And MMJ fails to plead the grant's name, source, amount, eligibility requirements, standards for its continued receipt, expected duration, reporting requirements, and other relevant datapoints needed to put the State and the Court on notice of a particular and plausible injury. MMJ instead asks the Court to assume that SF2340 will violate an unidentified grant. This is not enough.

### 4.   *The Supremacy Clause does not provide Plaintiffs a cause of action.*

The Supremacy Clause explains that States' laws are unenforceable to the extent they conflict with federal law. U.S. Const. art. VI, cl. 2. It "does not create a cause of action" because it is a rule of decision. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–325 (2015). "It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* The Supremacy Clause thus does not "give affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against

the States." *Id.* Congress must enact a cause of action to allow parties to bring that claim.

Nowhere do Plaintiffs assert an underlying cause of action that allows them to bring their preemption claim. Their claim, without more, implies that the Supremacy Clause confers rights. But it does not. Only in rare cases may courts "grant injunctive relief against state officers who are violating, or planning to violate, federal law." *Armstrong*, 575 U.S. at 326.

But again, SF2340 tracks federal law, because it provides an analogue to a federal crime. Worse, Doe and Roe are not subject to an imminent enforcement action because they are not subject to SF2340; they are not the "private parties" entitled to seek protection from federal courts against state enforcement officials. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).

As for MMJ, SF2340 cannot criminally charge an organization, nor does it allow state officials to violate federal law, so *Ex parte Young* does not give MMJ a cause of action. Indeed, "[a] nonstatutory cause of action brought by plaintiffs who stand to incur only indirect injuries from enforcement of a state law is far afield from *Ex parte Young.*" *United States v. Texas,* 97 F.4th 268, 310 (5th Cir. 2024) (Oldham, J., dissenting). So a nonstatutory cause of action also does not satisfy the third element of standing—that a federal court can adequately redress the harm. *See Spokeo,* 578 U.S. at 338.

## C.     Federal immigration law does not preempt SF2340.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona*, 567 U.S. at 398 (citations omitted). "[T]he states are sovereign save only as Congress may constitutionally subtract from their authority." *Parker v. Brown*, 317 U.S. 341, 351 (1943). Under the Supremacy Clause, "the Laws of the United States" take priority over conflicting state law. U.S. Const., art. VI, cl. 2.

Preemption is powerful and must be narrowly construed. *See Arizona*, 567 U.S. at 398–401. Courts scrutinize implied preemption claims because "an unexpressed purpose to nullify" state law "is not lightly to be attributed to Congress." *Parker*, 317 U.S. at 351. Implied preemption "start[s] with the

assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230. "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019). Indeed, federal enforcement priorities do not preempt state law: "The Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal officers." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020).

Plaintiffs raise two implied preemption arguments. Both fall short.

1. *SF2340 does not regulate in any field occupied by federal law.*

Field preemption "is itself suspect, at least as applied in the absence of a congressional command that particular field be preempted." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616–617 (1997) (Thomas, J., dissenting). Plaintiffs identify no such command. Only "[i]n rare cases" have courts found that Congress has "legislated so comprehensively in a particular field that it left no room for supplementary legislation," absent express preemption. *Kansas*, 589 U.S. at 208 (quotation omitted). The first step in field-preemption analysis is to define the "field." *Id.* "Every Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution." *Keller v. City of Fremont*, 719 F.3d 931, 942 (8th Cir. 2013) (quoting *DeCanas v. Bica*, 424 U.S. 351, 360 n.8 (1976) *superseded by statute on other grounds as recognized by Kansas*, 589 U.S. at 195).

Courts take care to narrowly define the preempted field. *Id.* at 943. Immigration law in toto is not preempted. *See DeCanas*, 424 U.S. at 354–356. The scope of a given field is narrower, as the Supreme Court's section-by-section analysis in *Arizona* shows. What's more, the federal government has important interests in many areas—yet state law is not preempted. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 573–581 (2009) (drug safety and enforcement); *California v. ARC Am. Corp.*, 490 U.S. 93, 101–

102 (1989) (antitrust). More is required to define a field's scope.

1. No one disputes the broad federal constitutional power to shape immigration. The federal government alone sets standards for naturalization and alien admissibility. *See, e.g.*, *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1876); *Truax v. Raich*, 239 U.S. 33, 42 (1915) (defining the federal government's "authority to control immigration" as the power "to admit and exclude aliens").

But the Supreme Court "has never held that every state enactment which in any way deals with aliens" is "pre-empted by this constitutional power, whether latent or exercised." *DeCanas*, 424 U.S. at 355. The Court has not extended field preemption to immigration laws beyond alien registration. *See, e.g.*, *Kansas*, 589 U.S. at 210 (rejecting overbroad definition of regulated field and explaining *Arizona* limited preemption to alien registration); *Arizona*, 567 U.S. at 401, 403–413 (holding that the federal government "has occupied the field of alien registration" but analyzing other challenged provisions based on obstacle preemption). But SF2340 does not touch that field. Considering the Supreme Court's increasing skepticism to extending implied field preemption, this Court should decline to do so, particularly in a pre-enforcement, facial challenge.

Even Supreme Court rulings based on constitutional immigration authority have not found exclusivity beyond the creation of admission, naturalization, and removal *standards. See, e.g.*, *Chy Lung*, 92 U.S. at 280; *Truax*, 239 U.S. at 42. And SF2340 affects no such standards either.

Instead, SF2340 exercises Iowa's inherent police power to enforce federal admissibility standards. Federal law cannot supersede States' police powers unless preemption was the clear purpose of Congress. *Wyeth*, 555 U.S. at 565. And the States' "power to exclude has long been recognized as inherent in sovereignty," *Arizona*, 567 U.S. at 418, (Scalia, J., concurring in part and dissenting in part) (collecting historical authorities), including by the Supreme Court, *see Mayor, Alderman and Commonalty of City of New York v. Miln*, 36 U.S. (11 Pet.) 102, 130–132 (1837).

The federal government's exclusive authority to naturalize and admit does not necessarily displace

the States' police power to exclude aliens in violation of federal standards. *See Chamber of Comm. v. Whiting*, 563 U.S. 582, 588, 600 (2011) (federal interest in immigration does not supersede States' "broad authority under their police powers" to enact immigration-related laws); *Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("[T]he States do have some authority to act with respect to illegal aliens, at least where such action mirrors federal objectives and furthers a legitimate state goal."). "The central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." *DeCanas*, 424 U.S. at 359. So once an alien violates federal admissibility standards, the States retain the power to prosecute.

2. SF2340 does not regulate admission standards, nor does it apply to those lawfully in the United States. Rather, it allows the State to prosecute an alien who enters, attempts to enter, or is found in the State after illegally reentering the country while subject to a reentry bar. *See* Iowa Code § 718C.2(1). Illegal reentry is thus not synonymous with admission. *See Cordova-Soto v. Holder*, 659 F.3d 1029, 1034 (10th Cir. 2011) (citing 8 U.S.C. §§ 1231(a)(5) and 1326(a)).

SF2340 does not apply unless the federal government determined an alien should not be admitted, and then the alien illegally reentered. Iowa Code § 718C.2(3). Further, Iowa officials do not make independent admissibility determinations. *See id.* Just as before SF2340, Iowa officials may obtain verification of a person's immigration status from federal officials. 8 U.S.C. § 1373(c).

SF2340 permits abating an SF2340 prosecution if federal immigration authorities have made a final determination that a person lawfully entered the country. *See* Iowa Code § 718C.6. So SF2340 simply makes it a state crime to enter Iowa after committing a federal immigration crime.

3. SF2340 also does not set removal standards. Section 4 provides for a judicial order detailing how an illegal alien will be taken to an Iowa port of entry, at which point the case is passed on to federal immigration officers. Ultimate removal is a question for those officers. Nothing in SF2340 gives Iowa any authority to remove a person from Iowa's port of entry, much less the country.

In short, SF2340 does not "establish a brand new immigration system" with entry and removal. Dkt. 9-1 at 7. It operates in fields open for state regulation and, as explained below, is limited to conduct proscribed under federal criminal law. Plaintiffs' resort to field preemption fails.

But if this Court decides that Section 4 improperly enters a supposedly preempted field, then only Section 4 should be enjoined. *See* Iowa Code § 4.12; *Merrill Lynch*, 414 U.S. at 127.

4. Even if the Court defines the field more broadly, the federal government must occupy that field to claim preemption. *Cf. Parker*, 317 U.S. at 358. But the executive branch has ignored its obligations. Its inaction is "akin to posting a flashing 'Come In, We're Open' sign on the southern border." *Florida v. United States*, 660 F. Supp. 3d 1239, 1253 (N.D. Fla. 2023); *Texas v. Biden*, 20 F.4th 928, 982 (5th Cir. 2021), *rev'd*, 597 U.S. 785 (2022). Plaintiffs should not be permitted to invoke field preemption based on laws the federal government declines to enforce. *Cf. Arizona*, 567 U.S. at 397 (premising the Court's decision on federal efforts to uphold federal immigration obligations). Even if a state law could be field preempted, it "does not affect the right of States to enforce their [field preempted] laws at times when the Federal Government [vacates] the field and is not protecting the entire country" from the conduct the federal law should, if applied, protect against. *Pennsylvania v. Nelson*, 350 U.S. 497, 500 (1956).

> 2.      *SF2340 aligns with the federal immigration scheme.*

Obstacle preemption is constitutionally unsound and should not be applied. The doctrine "rests on judicial guesswork about 'broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law.'" *Kansas*, 598 U.S. at 213–215 (Thomas, J., concurring). Federal law may preempt state law only when the two stand in logical contradiction. Pointing to the Executive Branch's immigration policies and preferences should not preempt a duly enacted state law. Put differently: The Executive's non-enforcement priorities do not amount to "Laws of the United States" under the Supremacy Clause. Indeed, "[t]here is no federal

preemption *in vacuo*, without a constitutional text, federal statute, or treaty made under the authority of the United States." *Kansas*, 589 U.S. at 202 (quotation omitted). Unable to point to a federal law that stands in logical contradiction to SF2340, Plaintiffs should not be allowed to resort to the "purposes and objectives" guesswork that obstacle preemption requires.

Even so, obstacle preemption does not preempt SF2340. Federal law rarely bars States from adopting federal law for state purposes. *See, e.g.*, *Gilbert v. Minnesota*, 254 U.S. 325, 330–331 (1920). "[T]here are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or state prosecutors." *Kansas*, 589 U.S. at 212. "[I]n the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests." *Id.* Overlap does not mean invalidity. *California v. Zook*, 336 U.S. 725, 733 (1949).

The Supreme Court has never held that States cannot enact criminal immigration laws that overlap with federal criminal immigration statutes, outside alien registration. For example, while *Arizona* rejected Arizona's criminal penalties, it did so based on those sections' context. *See Arizona*, 567 U.S. at 400–410. *Arizona* enjoined only one of the four challenged sections on field preemption grounds. *Id.* at 402–403. And it recognized that where the State is not operating in a field occupied by federal law, "a State may make violation of federal law a crime." *Id.* at 402.

*Arizona* enjoined two provisions based on obstacle preemption. But the reasons are key: they were obstacle preempted because they criminalized conduct that was not a federal crime, and thus frustrated the federal scheme to treat those violations with only civil penalties. *Id.* at 405, 407.

One section criminalized "removability," which is a civil—rather than a criminal—status. *Id.* at 407 ("As a general rule, it is not a crime for a removable alien to remain present in the United States.") (citations omitted). And after an alien is admitted and becomes removable, federal law leaves government discretion to facilitate that removal. *Id.* at 410. In contrast, Congress criminalized illegal reentry with mandatory language, leaving the federal government no discretion. 8 U.S.C. § 1326.

Iowa's law follows federal law, unlike the two obstacle-preempted provisions in *Arizona*.

SF2340 is more like the law upheld in *Kansas v. Garcia*. The Court held a Kansas identity-theft statute could be applied to an illegal alien who used a false identity for work authorization. 589 U.S. at 195. The Court distinguished *Arizona* because the Kansas law criminalized conduct also illegal under federal law. *Id.* at 211. "The mere fact that state laws like the Kansas provision at issue overlap to some degree with federal criminal provisions does not even begin to make the case for conflict preemption." *Id.* That is because "[f]rom the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Id.* at 212. "Our federal system would be turned upside down if we were to hold that federal criminal law preempts state law whenever they overlap," and there is no basis for inferring such preemption. *Id.* Rather, "in the vast majority of cases where federal and state laws overlap, allowing States to prosecute is entirely consistent with federal interests." *Id.* So too here.

Plaintiffs nonetheless contend SF2340 will disrupt the federal immigration scheme. *See* Dkt. 9-1 at 11–17. But under SF2340, federal officials retain discretion to offer asylum or other removal relief at ports of entry. And the federal government keeps exclusive authority to set the destination for removed aliens, because Iowa removes no one. In any event, Plaintiffs' argument targets Section 4 and, if correct, warrants severing and enjoining only that section.

Ultimately, SF2340 makes it a crime to violate federal criminal immigration law while in Iowa. Congress has made it a crime to reenter the country after having been "denied admission," been involuntarily "removed," or having departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a). Iowa's law creates a state analogue. Iowa Code § 718C.2(1). Both laws provide similar criminal penalties. Both allow for voluntary departure.

There is no conflict with federal law. Further, because SF2340 merely creates a state analogue to federal criminal reentry statutes, there also is no conflict with current U.S.-foreign relations. Federal

law already criminalizes illegal reentry, and removal authority remains with the federal government, so SF2340 creates no *new* implications for foreign relations.

2. Plaintiffs argue that immigration enforcement is an "exclusive" federal power. Dkt. 9-1 at 8, 9. Not so. Federal immigration law assumes State-federal cooperation in federal enforcement. *See, e.g.*, 8 U.S.C. §§ 1101(a)(15)(T)(i)(III)(aa), 1101(a)(15)(U)(iii), 1324(c), 1357(g)(1)–(10); 18 U.S.C. § 758; 22 U.S.C. § 7105(c)(3)(C)(i). The "federal scheme thus leaves room" for enforcement of a state law like SF2340. *Arizona*, 567 U.S. at 412–413 (citing *Whiting*, 563 U.S. at 609–610).

SF2340 merely authorizes state law enforcement to do what it already could. SF2340 enforcement begins when the State contacts the federal government to determine a person's immigration status, because Iowa does not maintain an independent immigration database. Federal law expressly permits State or local government entities to make these inquiries. 8 U.S.C. §§ 1373(a), 1644. Federal law even requires the federal government to respond. *See id.* § 1373(c); *cf. Whiting*, 563 U.S. at 582 (rejecting preemption challenge and finding federal law either permitted or encouraged use of federal work authorization database to impose licensing sanctions for hiring illegal aliens).

If the State's inquiry reveals that a person is in Iowa in violation of federal criminal immigration provisions and state law, then SF2340 allows for an order requiring that person to proceed to a port of entry and a federal customs official. And federal law expressly permits state officials to "'communicate with the [Federal Government] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States.'" *Arizona*, 567 U.S. at 411–412 (quoting 8 U.S.C. § 1357(g)(10)(A)).

*Arizona* held that §1357(g)(10) did not permit state officials to arrest individuals based on their civil removal status, but that holding did not extend to individuals violating federal criminal immigration provisions. *Arizona*, 567 U.S. at 410. This Court should go no further down that road.

3. Finally, Plaintiffs and amici argue that SF2340 conflicts with federal law because it criminalizes

legal immigration status. Dkt. 9-1 at 11–13; *see also* Dkt. 31. These arguments ignore constitutionally valid applications and disregard prosecutorial and judicial discretion in the enforcement of SF2340.

SF2340 does not apply to individuals who have been legally admitted to the United States. And it does not prevent an alien from seeking asylum, or any other federal relief from federal authorities. Once an alien is transported to a port of entry, federal officers make the ultimate removal determination; that necessarily includes the assessment of relevant legal defenses.

Plaintiffs also overstate Section 6's scope. Dkt. 9-1 at 13. It does not "bypass[] congressionally created removal defenses" or "require[] state officials to contradict federal law." Dkt. 9-1 at 13. Section 6 limits abatement to pending determinations or those not yet initiated. *See* Iowa Code § 718C.6. It does not apply to final federal determinations. *See Kucera*, 745 N.W.2d at 487. In those cases, abatement is required. *See Weissenberger*, 740 N.W.2d at 436.

Section 6 bars abatement for pending or not-yet initiated federal immigration determinations but does not prohibit discretionary stays. Of course, if a case is stayed for an asylum proceeding, the prosecution would then abate in the event of a final grant of asylum.

4. Plaintiffs' arguments illustrate the problems in a pre-enforcement, facial challenge: a pre-enforcement challenge is not the time to rule on a statute's constitutionality where there is a plausible constitutional reading and uncertainty as to how state courts will interpret it. This is true for at least four fundamental reasons.

*First*, Iowa courts interpreting Iowa laws reason that "[i]f the law is reasonably open to two constructions, one that renders it unconstitutional and one that does not, the court must adopt the interpretation that upholds the law's constitutionality." *Abrahamson*, 696 N.W.2d at 593.

*Second, Arizona* held it is inappropriate to assume a law will conflict with federal law. *Arizona*, 567 U.S. at 415. It is improper to enjoin SF2340 "before the state courts had an opportunity to construe it and without some showing that enforcement of the provision in fact conflicts with federal

immigration law." *Id.* at 416. "The fact that [a law] might operate unconstitutionally under some conceivable set of circumstances is" not enough to render it invalid. *Id.* at 425 (Scalia, J., concurring in part and dissenting in part) (quoting *Salerno*, 481 U.S. at 745).

*Third*, several federal courts of appeals—including the Eighth Circuit—have taken the same cautious approach. *See, e.g.*, *Keller*, 719 F.3d at 945 (uncertain interpretation and application "illustrate[s] why facial challenges are disfavored and, accordingly, why Plaintiffs' facial challenge must fail."); *Georgia Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1267–68 (11th Cir. 2012); *United States v. Alabama*, 691 F.3d 1269, 1284 (11th Cir. 2012).

*Fourth*, Plaintiffs may invent scenarios where SF2340 might be applied in tension with federal law, but that cannot show Plaintiffs are "likely to prevail on the merits." *Rounds*, 530 F.3d at 730. To succeed, there must be no circumstance where the statute can be constitutionally applied. *Furlow*, 52 F.4th at 400. Plaintiffs' hypotheticals do not make that showing. After all, courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Rep. Party,* 552 U.S. 442, 449–450 (2008).

*Finally*, if this Court decides Section 4 creates an "obstacle" to the federal immigration scheme, then only that provision should be enjoined. *See* Iowa Code § 4.12; *Merrill Lynch*, 414 U.S. at 127.

## II.     The Other Factors Weigh Against A Preliminary Injunction.

Because Plaintiffs are unlikely to succeed, the Court need not proceed to the other factors. *See Rounds*, 530 F.3d at 732. But those factors also weigh against an injunction.

Plaintiffs do not face irreparable harm. They must show the alleged "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015). But SF2340 does not apply to Individual Plaintiffs. And MMJ's work relates to helping legal aliens receive benefits to which they are lawfully entitled and maintain their lawful status. But SF2340 applies only to those with unlawful status, so MMJ's mission is unharmed.

Individual Plaintiffs do not show why an injunction is necessary to prevent irreparable harm. The irreparable harm they assert is potential deportation. They can assert their claims in an as-applied challenge or defense to prosecution. State courts must address raised questions of federal law, even when those claims are criminal. *Testa v. Katt*, 330 U.S. 386, 394 (1947); *see also Whole Woman's Health*, 595 U.S. at 49 ("This Court has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court."). So whether the claims are as-applied preemption challenges or defenses to deportation, Plaintiffs can assert those defenses in state court.

As to the balance of harms, an injunction irreparably harms the State. Iowa is at the crossroads of the cartels' human trafficking enterprise and exploitation of the illegal immigration crisis. Enforcing SF2340 to deter human trafficking and other illegal immigration byproducts is firmly in the public interest. And Iowa must provide services to tens of thousands of illegal aliens, and police officers must respond to crimes they suffer or commit. These harms are especially poignant as SF2340 involves Iowa's core sovereign right to use its police power to control who may enter its territory. *See Miln*, 36 U.S. (11 Pet.) at 132; *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (implying "the State's interest in the enforcement of its criminal laws" is among the most important interests).

And an injunction is not in the public interest. Not only because an injunction leaves Plaintiffs in the same position as if the law is enforced, but also because "any time a State is enjoined by a court from effectuating statutes... it suffers a form of irreparable injury." *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *see Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) (similar). Indeed, statutes are supposed to be "presumed constitutional and all doubts are resolved in favor of constitutionality." *Arkansas Times LP v. Waldrip as Tr. Of Univ. of Ark. Bd. of Trustees*, 37 F.4th 1386, 1393 (8th Cir. 2022).

## CONCLUSION

For these reasons, the Court should deny the preliminary injunction.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric Wessan*
Eric Wessan
*Solicitor General*

*/s/ Patrick C. Valencia*
Patrick C. Valencia
*Deputy Solicitor General*

*/s/ Breanne A. Stoltze*
Breanne A. Stoltze
*Assistant Solicitor General*

*/s/ Nicholas Davis*
Nicholas Davis
*Assistant Attorney General*

Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov
nick.davis@ag.iowa.gov

ATTORNEYS FOR DEFENDANT

*Original filed electronically.*
*Copy electronically served on all parties of record.*

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served on counsel for all parties of record by delivery in the following manner on May 31, 2024:

☐ U.S. Mail                 ☐ FAX
☐ Hand Delivery        ☐ Overnight Courier
☐ Federal Express      ☐ Other
☒ CM/ECF

Signature: */s/ Breanne A. Stoltze*