## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| IOWA MIGRANT MOVEMENT FOR JUSTICE, JANE DOE, ELIZABETH ROE )<br><br>*Plaintiffs*,<br><br>v.<br><br>ATTORNEY GENERAL OF IOWA BRENNA BIRD, in her official capacity, POLK COUNTY ATTORNEY KIMBERLY GRAHAM, in her official capacity, CLAYTON COUNTY ATTORNEY ZACH HERRMANN, in his official capacity,<br><br>*Defendants*. | Case No. 4:24-cv-161 |

## REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | Introduction | 1 |
| II. | Plaintiffs Doe and Roe and Iowa MMJ, On Behalf of Its Members, Have Standing | 1 |
| III. | Iowa MMJ Has Organizational Standing | 4 |
| IV. | Plaintiffs Have an Equitable Cause of Action Under *Ex parte Young* | 5 |
| V. | S.F. 2340 Is Field and Conflict Preempted. | 6 |
| VI. | Severance Is Not Warranted | 11 |
| VII. | Conclusion | 11 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page**

*Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774 (8th Cir. 2019)...................................... 2
*Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416 (Iowa 1991) ......................11
*Arizona v. United States*, 567 U.S. 387 (2012) ................................................................ 1, 7, 8, 9, 10
*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ..................................................... 6
*Chamber of Comm. v. Whiting*, 563 U.S. 582 (2011) ...................................................................... 7
*Citizens for Equal Protection v. Bruning*, 455 F.3d 859 (8th Cir. 2006) ........................................ 6
*Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231 (11th Cir. 2022) ................................ 9
*DeCanas v. Bica*, 424 U.S. 351 (1976) ...................................................................................... 7, 10
*Ex parte Young*, 209 U.S. 123 (1908) ......................................................................................... 5, 6
*Farmworker Ass'n of Fla., Inc. v. Moody*, 2024 WL 2310150 (S.D. Fla. May 22, 2024) ......... 3, 6
*Fed. Election Comm'n v. Cruz*, 596 U.S. 289 (2022)...................................................................... 5
*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .............................................................. 4, 5
*Kansas v. Garcia*, 589 U.S. 191 (2020) ........................................................................................ 10
*Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013) .........................................................10, 11
*Kucera v. Baldazo*, 745 N.W.2d 481 (Iowa 2008) .......................................................................... 2
*Kuehl v. Sellner*, 887 F.3d 845 (8th Cir. 2018).............................................................................. 4
*League of Women Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714 (7th Cir. 2021) .............................. 9
*Lozano v. City of Hazleton*, 724 F.3d 297 (3d Cir. 2013) .............................................................. 9
*Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932 (8th Cir. 2023) ........................ 6
*Plyler v. Doe*, 457 U.S. 202 (1982) ................................................................................................ 7
*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019) .......................................................................... 4
*State v. Meyers*, 938 N.W.2d 205 (Iowa 2020) .............................................................................. 3
*Stenberg v. Carhart*, 530 U.S. 914 (2000) ..................................................................................... 3
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .............................................................. 2
*Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694 (8th Cir. 2021) .......................................... 2
*United States v. Salerno*, 481 U.S. 739 (1987) .............................................................................. 9
*United States v. Texas*, 97 F.4th 268 (5th Cir. 2024) .............................................................. 6, 7, 8
*Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011) .................................................. 6
*Warth v. Seldin*, 422 U.S. 490, 511 (1975)..................................................................................... 4

**Statutes**

2024 Iowa Acts Senate File 2340 (to be codified as new Iowa Code ch. 718C (2024)) ....... *passim*
8 U.S.C. § 1101(g) ........................................................................................................................... 3
8 U.S.C. § 1231(a) ........................................................................................................................... 3
8 U.S.C. § 1326...................................................................................................................2, 9, 11, 12
Iowa Code § 331.756(1) .................................................................................................................. 4
Iowa Code § 902.9(d) ...................................................................................................................... 6

I.   **Introduction**

Faced with a patently preempted statute, Defendant Bird goes to great lengths to rewrite the law as enacted and ignores binding Supreme Court precedent. Defendant begins with a citation to a dissenting opinion and proceeds to offer a series of edits to the statute's clear text: She claims that S.F. 2340 will not effect removals, even though its text requires people "to return to the foreign nation from which the person entered," or else face an additional 10-year penalty. And she ties herself in knots to invent an exception for people with lawful status, even though the text conspicuously omits any such exception. Defendant's refusal to defend the law as written underscores that S.F. 2340 is indefensible.

But even under Defendant's atextual narrowed construction, S.F. 2340 is plainly preempted because it operates in the exclusively federal field of entry and removal and conflicts with the federal scheme. Iowa asserts that it has the power to "enforce federal admissibility standards," Dkt. 36 at 17, by prosecuting people based on how they enter the country, and then ordering them to leave the United States—for which "compliance is mandatory," *id.* at 3. Under *Arizona* and 150 years of precedent, it clearly cannot do either. Because Plaintiffs have standing, a cause of action, and will suffer irreparable harm if Iowa's law is permitted to go into effect, the Court should grant Plaintiffs' motion.

II.   **Plaintiffs Doe and Roe and Iowa MMJ, On Behalf of Its Members, Have Standing**

For pre-enforcement standing to challenge a criminal statute, Plaintiffs Doe and Roe and Iowa MMJ members Anna and David need only establish that their "intended future conduct is *arguably proscribed* by the statute they wish to challenge" such that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 162

1

(2014) (cleaned up) (emphasis added); *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021). "This is a forgiving standard...." *Turtle Island Foods*, 992 F.3d at 699.

Ms. Doe, Ms. Roe, Anna, and David fall within the plain text of the statute. They are all "alien[s]," who "ha[ve] been . . . removed from the United States," and have "enter[ed]" and can be "at any time found in" Iowa. Iowa Code § 718C.2(1); *see* Ex. A, Doe Decl. ¶¶ 2, 10-12; Ex. B, Roe Decl. ¶¶ 2, 8-9, 13; Ex. C, Johnson Decl. ¶¶ 20, 22. That is more than enough to "arguably" come within the statute and therefore face an imminent risk of prosecution. *See Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 777–78 (8th Cir. 2019).

Defendant Bird argues that Ms. Doe and Ms. Roe are not subject to prosecution because they returned to the United States with federal authorization and, like Anna, currently have lawful status. Dkt. 36 at 5-7, 9. But the statutory text does not include such exceptions. Notably, S.F. 2340 tracks the federal illegal reentry statute, but specifically omits that statute's exception for persons who return to the United States with federal consent, *compare* Iowa Code § 718C.2(1) *with* 8 U.S.C. § 1326(a)(2)(A)-(B), further undermining Defendant's new proposed construction, *see Kucera v. Baldazo*, 745 N.W.2d 481, 487 (Iowa 2008). And Defendant Bird's concession that applying S.F. 2340 to those with lawful status would clearly be preempted, Dkt. 36 at 7, cannot vitiate standing when the plain text allows such prosecutions.[1]

Defendant resorts to strained contortions to argue that Plaintiffs are not covered by the statute. *See id.* at 6 (plaintiff "did not have a 'deported' 'condition' or 'state of affairs' when she

---

[1] Defendant makes the astonishing assertion that individual Plaintiffs and MMJ members must face arrest, pretrial detention, and prosecution, because they can assert their lawful status as a defense against to an "inadvertent[]" prosecution. Dkt. 36 at 9. But the whole point of pre-enforcement review is that plaintiffs need not suffer these irreparable harms in order to challenge a law. *See* Dkt. 9-1 at 18-19.

2

reentered the country"). But in addition to being contrary to the text, this reading is grounded in a misunderstanding of immigration law. A removal— previously referred to as an exclusion or deportation—is an action that occurs at a specific moment in time. *See, e.g.*, 8 U.S.C. § 1101(g) (noncitizen subject to a removal order is considered "deported" or "removed" once she "has left the United States"); *id.* § 1231(a) (specifying 90-day period for removal, and what the government should do if removal is not accomplished during that period). The Iowa statute refers to a person who "has been . . . removed," Iowa Code § 718C.2(1)(a), which can only mean someone against whom that discrete action of removal was taken at a particular moment in the past. Departure while an order of removal was outstanding under § 718C.2(1)(b) is likewise a specific act. *See* 8 U.S.C. § 1101(g). The fact of a prior removal may have current consequences, including triggering inadmissibility, but it is a historical fact, not a current "status" that is obviated by permission to reenter. Defendant's suggestion that the trigger for the illegal reentry crime is the noncitizen's "prevailing condition" of "deported" is nonsensical. Dkt. 36 at 5.

Courts frequently reject attempts to defeat standing through narrowing constructions like this. *See, e.g.*, *Farmworker Ass'n of Fla., Inc. v. Moody*, No. 23-cv-22655, 2024 WL 2310150, at *7 (S.D. Fla. May 22, 2024). Defendant's ad hoc interpretation in a single brief does not even bind *her*, much less the state courts, county prosecutors, and police who will enforce S.F. 2340. *See State v. Meyers*, 938 N.W.2d 205, 211 (Iowa 2020) ("We give attorney general opinions respectful consideration but are not bound by them."); Iowa Code § 331.756(1) (granting elected county attorneys independent authority to enforce criminal laws); *cf. Stenberg v. Carhart*, 530 U.S. 914, 940-41 (2000). As such, it cannot meaningfully protect Plaintiffs. *See Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (a state's "in-court assurances [of non-enforcement] do not rule out the possibility that it will change its mind and enforce the law more aggressively in

the future" where "the law's plain language covers [plaintiffs'] intended activities"). In any event, David is subject to prosecution even under Defendant Bird's narrow construction, as the record clearly demonstrates. Ex. C, Johnson Decl. ¶ 22 (explaining that David was deported, re-entered without consent, and has not obtained immigration status).

Because Iowa MMJ's members have standing, MMJ has standing to sue on their behalf. *See Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018). It easily satisfies the other elements of associational standing: as discussed below, enjoining S.F. 2340 is germane to MMJ's mission; and Defendant does not dispute that MMJ's purely legal claims for declaratory and injunctive relief do not require the participation of its members. *See id.* [2]

### III.   Iowa MMJ Has Organizational Standing

MMJ also has "standing in its own right." *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). S.F. 2340 undermines MMJ's mission of "expanding access to lawful immigration pathways" and "preventing the unjust removal of immigrants." Ex. C, Johnson Decl. ¶¶ 4, 29, 33. The law subjects many of MMJ's clients to the risk of prosecution and removal despite their eligibility for federal immigration benefits. That change would upend MMJ's operations and force it to alter its intake process, re-screen existing clients to identify risks to their pending applications, and incorporate state criminal law into their immigration legal services practice. *Id.* ¶¶ 27-33.

Iowa does not meaningfully contest that these harms will occur. It *agrees* that S.F. 2340

---

[2] Defendant's argument that Plaintiffs lack standing to challenge the order to return provisions should be rejected. Dkt. 36 at 11. Defendant Bird does not dispute that Defendants are responsible for enforcing S.F. 2340, that an order to return must be predicated on a prosecution under the statute, and that order itself is enforced through the threat of further prosecution. *See* Iowa Code §§ 718C.4-C.5. Therefore, an order enjoining Defendant Bird from enforcing the law would remedy any harm that results from the removal provisions.

fully authorizes the arrest and prosecution of individuals like MMJ's clients who are seeking to obtain status under federal immigration law. Dkt. 36 at 8-9. And while it tries to downplay the threat of removal from the United States posed by S.F. 2340, *id*. at 9-10, the statutory text is clear.. Once a person is convicted or agrees to forego prosecution, S.F. 2340 requires judges to impose a mandatory order "to return to the *foreign nation* from which the person entered . . ." Iowa Code § 718C.4(4) (emphasis added). Refusal to comply with an "Order to Return" is a state crime punishable by up to 10 years in prison; there are no affirmative defenses. *Id.*; § 902.9(d). By forcing its clients to leave the country, S.F. 2340 would inflict clear injuries on MMJ.

Iowa argues in the alternative that even if MMJ faces these diversions of resources, they are "self-inflicted." Dkt. 36 at 13.  But MMJ's new intake and case review procedures are a necessary part of providing immigration representation under S.F. 2340—they are directly caused by the new law.  Ex. C, Johnson Decl. ¶¶ 27, 32-33.  Other diversions are compelled by MMJ's mission.  *See, e.g., id.* ¶ 33.  These efforts to address the fallout from S.F. 2340 are precisely what creates organizational standing, even if the "injury could be described . . . as willingly incurred." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022); *see Havens Realty Corp.*, 455 U. S. at 373-374 (organization had standing to challenge housing discrimination it had chosen to address).

MMJ's loss of grant funding is also sufficiently particularized, because MMJ identifies specific projects affected by S.F. 2340 and outlines conditions the grants impose. Ex. C, Johnson Decl. ¶¶ 7, 8, 25, 34 . Additional details are not required, especially at this preliminary stage.

## IV. Plaintiffs Have an Equitable Cause of Action Under *Ex parte Young*

Defendant Bird does not acknowledge the "power of federal courts of equity" to "issue an injunction upon finding [] state regulatory actions preempted" even though the Supremacy

Clause itself does not create an implied cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015) (courts "regularly consider[]" such challenges); *see Crown Castle Fiber, L.L.C. v. City of Pasadena, Texas*, 76 F.4th 425, 434-35 (5th Cir. 2023). Nor does Defendant suggest that Congress has displaced Plaintiffs' equitable claims in this case. *See United States v. Texas*, 97 F.4th 268, 278 (5th Cir. 2024).

Instead, Defendant asserts sovereign immunity bars these claims, though she does not dispute that she is a state officer charged with enforcing S.F. 2340 and that Plaintiffs seek only prospective relief. *See Ex parte Young*, 209 U.S. 123 (1908). Defendant argues, relying only on a single judge's dissenting opinion, that the *Ex parte Young* exception is unavailable because no plaintiff is at risk of prosecution under S.F. 2340. Dkt. 36 at 15. As an initial matter, Plaintiffs Doe and Roe and MMJ members *are* at risk of prosecution. *See supra* at 1-4. And as to MMJ as an organization, the Supreme Court has explained that "there is no warrant in our cases for making the validity of an *Ex parte Young* action turn on the identity of the plaintiff." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256 (2011). Courts, including the Eighth Circuit, routinely hold that organizations satisfy the *Ex parte Young* standard even though they are not directly regulated. *See, e.g. Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006) (advocacy organization challenging same-sex marriage bar); *Pharm. Rsch. & Manufacturers of Am. v. Williams*, 64 F.4th 932, 950 (8th Cir. 2023) (trade association challenging requirement to provide free vaccines); *see also Farmworker Ass'n of Fla.*, 2024 WL 2310150, at *9–10 (organization that diverted resources could raise preemption claim).

### V.   S.F. 2340 Is Field and Conflict Preempted.

1.  Defendant Bird acknowledges that "[t]he federal government alone" may set "admission, naturalization, and removal standards." Dkt. 36 at 17. Defendant has no answer to

6

the long line of Supreme Court cases stating that this field is exclusively federal, the pervasive scope of Congress' entry and removal scheme, *see* Dkt. 9-1 at 2-5, 7-11, and the "broad discretion" inherent in this system, which implicates foreign affairs and rests with the federal government alone. *Arizona v. United States*, 567 U.S. 387, 394-97 (2012); *United States v. Texas*, 599 U.S. 670, 679 (2023); *United States v. Texas*, 97 F.4th 268, 281–82 (5th Cir. 2024).[3]

Instead, Defendant's main argument appears to be that S.F. 2340 is permissible because it does not alter the substantive federal standards for entry, and merely allows the State "to enforce federal admissibility standards" however it chooses. Dkt. 36 at 17-18. At the outset, that premise is wrong, because as explained above and below, S.F. 2340 criminalizes conduct not covered by 8 U.S.C. § 1326. But even if the statutes were identical, *Arizona* makes utterly clear that a state cannot duplicate or enforce federal immigration law on its own. Section 3 of Arizona's law did exactly what Iowa is claiming authority to do: it created a new state criminal offense that "add[ed] a state-law penalty for conduct proscribed by federal law." 567 U.S. at 400; *see* Dkt. 36 at 21. There, as here, the state argued that it was permissible to enforce a state analogue because it had "the same aim as federal law and adopt[ed] its substantive standards." *Arizona*, 567 U.S. at 402. The Court nevertheless held the provision preempted, because "[f]ield preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Id*. at 401("Where Congress occupies the entire field, . . . even complementary state regulation is impermissible.").

---

[3] By contrast, the cases Defendant invokes did not deal with the field of entry and removal. *See Chamber of Comm. v. Whiting*, 563 U.S. 582 (2011) (employment of noncitizens); *DeCanas v. Bica*, 424 U.S. 351 (1976) (same); *Plyler v. Doe*, 457 U.S. 202 (1982) (education, holding that state restrictions were invalid).

Defendant also claims that field preemption is limited to registration, Dkt. 36 at 17, but everything the Supreme Court said about registration is just as true—if not significantly more so—of the entry and removal scheme, which is "comprehensive," includes "punishment for noncompliance," and is closely tied to foreign affairs. *Arizona*, 567 U.S. at 401-02, 395-97; Dkt. 9-1 at 2-4, 7-11. If a state cannot punish immigrants for failing to carry registration paperwork, it certainly cannot regulate entry directly and order people to leave the country. *See Texas*, 97 F.4th at 279-80 (rejecting similar argument as contrary to *Arizona*). Moreover, the glaring "inconsistenc[ies] between [S.F. 2340] and federal law," —different removal procedures and standards and no exception for people who reentered with permission—serve to "underscore the reason for field preemption." *Arizona*, 567 U.S. at 402-403.

2. *Arizona*'s conflict analysis similarly forecloses Defendant's assertion that Iowa can independently "enforce federal admissibility standards." Dkt. 36 at 17-18. *Arizona* rejects the idea that states can enforce federal immigration law on their own, without federal "direction and supervision." 567 U.S. at 413.

S.F. 2340 is thus conflict preempted for the same reasons as Section 6 in *Arizona*, which authorized state officers to arrest noncitizens based on probable cause of removability. *Id.* at 407-10. Under S.F. 2340, as with Section 6, the "state authority could be exercised without any input from the Federal Government," which "would allow the State to achieve its own immigration policy" and could lead to "unnecessary harassment" of noncitizens "who federal officials determine should not be removed." *Id.* at 408; *see id.* at 413 ("[I]t would disrupt the federal framework to put state officers in the position of holding aliens in custody for possible unlawful presence without federal direction and supervision."). If states on their own cannot even *arrest* people for violating federal standards, they surely cannot unilaterally arrest, prosecute, imprison,

and remove people for violating federal standards. *See id.* at 408-10 (describing "limited circumstances" where state officers can assist with immigration enforcement); Dkt. 36 at 22 (noting some of these circumstances).

Defendant suggests that some applications of S.F. 2340 may avoid these conflicts. Dkt. 36 at 23-24.[4] But unilateral state enforcement will happen *every* time S.F. 2340 is enforced; under any interpretation, it will be state police who arrest, state prosecutors who bring charges, state judges who order people removed. Thus, every time Iowa enforces the law, it deprives the federal government of their exclusive control over the federal scheme. Dkt. 9-1 at 14-15. Likewise, *every* conviction will result in state-mandated removal, depriving Iowans of their right to have their removability determined through the federal removal process, with its procedural and substantive protections.[5] Dkt. 9-1 at 5, 11-13. Defendant therefore finds no support in *United States v. Salerno*, 481 U.S. 739 (1987). *See also Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1256 (11th Cir. 2022); *League of Women Voters of Ind., Inc. v. Sullivan*, 5 F.4th 714, 728-29 (7th Cir. 2021); *Lozano v. City of Hazleton*, 724 F.3d 297, 313 n.22 (3d Cir. 2013).

In addition, as with Section 5(C) of the Arizona law, S.F. 2340 improperly criminalizes conduct where "Congress made a deliberate choice not to impose criminal penalties" and is therefore conflict preempted. *Arizona*, 567 U.S. at 405; *see* Dkt. 9-1 at 13-14. Defendant's attempted rewrite aside, the plain text of S.F. 2340 imposes penalties on people who return to the United States with federal consent, a category that Congress expressly excepted from the reach of the federal statute, *compare* Iowa Code § 718C.2(1) *with* 8 U.S.C. § 1326(a)(2)(A). As such,

---

[4] Of course, field preemption invalidates every application of S.F. 2340.
[5] Nor does the purported availability of a "discretionary stay" to obtain a final federal determination of status, notwithstanding the prohibition on "abatement," avoid any conflict, because the question of whether or not a person can obtain such a determination is still at the whim of the State. Dkt. 36 at 9.

9

Iowa's attempt to incarcerate and remove such noncitizens "is an obstacle to the regulatory system Congress chose." *Arizona*, 567 U.S. at 406; *see Kansas v. Garcia*, 589 U.S. 191, 211 (2020) (where Congress "conferred a right to be free of criminal [] penalties . . . a state law making it a crime to engage in that conduct conflict[s] with this federal right").

3. Defendant's cases are unavailing. *Kansas v. Garcia* considered prosecution for submitting a tax-withholding form under a generally applicable state identity fraud statute and did not address the exclusively federal field of entry and removal. *See* 589 U.S. at 208–10 (noting the lack of a comprehensive federal regime governing state tax withholding). Nor do Plaintiffs' conflict preemption claims rely on mere "overlap" between S.F. 2340 and 8 U.S.C. § 1326. Dkt. 9-1 at 11-17. Rather, as explained, S.F. 2340 displaces the carefully balanced statutory regime of federal control over the immigration system, deprives noncitizens of their rights to seek federal relief against removal, and punishes people for doing what federal law allows. None of that was true of the identity fraud prosecutions in *Kansas*. *See* 589 U.S. at 211.

*Keller v. City of Fremont* only supports Plaintiffs' claims. 719 F.3d 931 (8th Cir. 2013). In *Keller*, the Eighth Circuit considered a city ordinance that, in relevant part, made it unlawful to rent property to individuals who the federal government verified were "illegal alien[s]." 719 F.3d at 938. The Court acknowledged that regulating immigration is "unquestionably exclusively a federal power," and held that the ordinance did not impermissibly intrude on the field of removal because its "provisions neither determine[d] 'who should or should not be admitted into the country,' nor d[id] they more than marginally affect 'the conditions under which a legal entrant may remain.'" *Id.* at 940-41 (quoting *DeCanas,* 424 U.S. at 354-55). S.F. 2340, however, does precisely that: It *directly* regulates entry and who may remain through "a parallel local process to determine an alien's removability." *Id.* at 942. Moreover, unlike the rental ordinance that

10

mandated federal involvement such that "federal immigration officials retain[ed] complete discretion to decide whether and when to pursue removal proceedings," here Iowa has taken unilateral control of the removal process. *Id.* at 944-45.

## VI.   Severance Is Not Warranted

Defendant asks that S.F. 2340's removal provisions be severed should this Court find that they alone are preempted, Dkt. 36 at 21, but S.F. 2340 is preempted in its entirety. S.F. 2340's crime of illegal reentry, even standing alone, is preempted because it both operates in an exclusively federal field and conflicts with the federal scheme. *See supra* at 6-11; *see also* Dkt. 9-1 at 6-17 (unilateral enforcement, negating federal discretion, prosecuting what federal law allows). Even if the entire statute were not preempted, the removal provisions cannot be severed because they are an integral part of the statute's operation and critical to fulfilling the statute's legislative purpose. *See Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416*,* 418 (Iowa 1991); Iowa Code §§ 718C.2(3), 718C.4, 718C.5. Removal is incorporated at the start of prosecution, with the threat of criminal penalties used to induce people to accept early removal. *See* §§ 718C.4(1)-(3). Such an order avoids prosecution and the cost to the State of incarceration and probation. And at the end of prosecution, the Order to Return is a *mandatory* penalty. § 718C.4(4). It would dramatically alter the scope, penalties, and the fiscal impact of the law if Iowa could not order the departure of noncitizens under S.F. 2340.

## VII.   Conclusion

Because Plaintiffs have standing and a cause of action to challenge this plainly preempted law, and have shown a likelihood of irreparable harm, the Court should enter a preliminary injunction; a balance of the equities supports such relief.

DATED:  June 6, 2024            Respectfully submitted,

/s/ Emma Winger
Emma Winger*
Michelle Lapointe*
Suchita Mathur*
Gianna Borroto*
AMERICAN IMMIGRATION COUNCIL
1331 G St. NW, Suite 200
Washington, DC 20005
Phone: (202) 507-7512
ewinger@immcouncil.org
mlapointe@immcouncil.org
smathur@immcouncil.org
gborroto@immcouncil.org

Rita Bettis Austen, AT0011558
Shefali Aurora, AT0012874
Thomas Story, AT0013130
ACLU of Iowa Foundation Inc.
505 Fifth Avenue, Ste. 808
Des Moines, IA 50309-2317
Phone: (515) 243-3988
Fax: (515) 243-8506
rita.bettis@aclu-ia.org
shefali.aurora@aclu-ia.org
Thomas.story@aclu-ia.org

Spencer Amdur**
Cody Wofsy**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
samdur@aclu.org
cwofsy@aclu.org

Anand Balakrishnan**
Wafa Junaid**
Noor Zafar**
Omar Jadwat**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor

New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
abalakrishnan@aclu.org
wjunaid@aclu.org
nzafar@aclu.org
ojadwat@aclu.org

*For Plaintiffs Iowa Migrant Movement for Justice, Jane Doe, Elizabeth Roe*


\* Admitted *pro hac vice*
\*\* *Pro hac vice* motion forthcoming

CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper and accompanying exhibits with the Clerk of Court by using the CM/ECF system.

Defendant Clayton County Attorney Zach Herrmann will be served with the foregoing paper and exhibits. All other participants in this case are registered CM/ECF users and will served by the CM/ECF system.

Date: June 6, 2024

        /s/ Emma Winger
Emma Winger
American Immigration Council
1331 G St. NW, Suite 200
Washington, DC 20005
Phone: (202) 507-7512
ewinger@immcouncil.org